**Stephen A. IRVING, et al. v. AGENCY OF TRANSPORTATION, Champlain Valley Aviation, Inc., Charles Boyer and Wayne Eels**

[768 A.2d 1286]

No. 99-393

February 13, 2001. Plaintiff Stephen A. Irving appeals the judgment of the Franklin Superior Court denying his motion for judgment as a matter of law or, alternatively, a new trial following a jury verdict for defendants. Irving brought suit individually, as the administrator of the estates of Sandra and Andrew Irving and as next friend to Adam Irving against the Vermont Agency of Transportation, Champlain Valley Aviation, Charles Boyer, and Wayne Eels following a mid-air collision in which his wife and son were killed. Irving argues on appeal that liability was proved as a matter of law or, alternatively, the verdict was against the weight of substantial evidence. Furthermore, Irving argues that the trial court erred when it failed to exclude expert testimony from lay witnesses and when it instructed the jury on the standard of care. We affirm.

When reviewing a trial court's refusal to grant a post-trial motion for judgment as a matter of law or a new trial, the evidence must be viewed in the light most favorable to the nonmoving party. *Brueckner v. Norwich Univ.*, 169 Vt. 118, 120-21, 730 A.2d 1086, 1089 (1999).

Viewed in this light, the facts are as follows: On June 10, 1995, the Irving family went to the Franklin County Airport to meet Todd Taylor, an individual they knew through their church. Taylor had offered to take the family on a sight-seeing tour in a Cessna 172, a small plane rented by Champlain Valley Aviation, the fixed base operator at the airport. Because of the size of the plane, only two passengers could fly at a time. Sandra and Andrew Irving went first, while Stephen and Adam Irving watched from the ground.

The 172 took off from the runway and, in the course of its climb, collided with a Cessna 150, another small plane, piloted by Charles Boyer. The tail of the 172 was

severed from the plane in the collision, causing the aircraft to fall immediately to the ground. All three occupants were killed in the crash. The 150, however, was able to make an emergency landing, and Boyer survived.

Boyer had also rented the 150 from Champlain Valley Aviation. He was a student pilot. The evening before the accident, Boyer had received permission from his instructor, Wayne Eels, to fly solo and had completed his first supervised solo flight. He had returned to the airport by himself the morning of the accident to log more practice hours flying. At the time of the accident, Boyer was attempting to reenter the traffic pattern in order to land. Boyer did not see the 172 until seconds before the planes collided. The 172 was not maneuvering in a way that would indicate that Taylor, the pilot, had seen the 150 either, and the Irvings' expert opined that Taylor never saw the 150 approaching.

On appeal, Irving argues first that the trial court erred when it viewed the evidence in the light most favorable to the defendants in its analysis of both the motion for judgment as a matter of law and the motion for a new trial. Relying on federal case law interpreting Fed. R. Civ. P. 59(a), he contends that, when analyzing a motion for a new trial brought under V.R.C.P. 59(a), a trial court should not view the evidence in the light most favorable to the jury's verdict, but should instead undertake an independent review.

Although V.R.C.P. 59 is based on Fed. R. Civ. P. 59 in general, *Brault v. Flynn*, 166 Vt. 585, 586, 690 A.2d 1365, 1366 (1996) (mem.), the text of the two rules differs. Compare Fed. R. Civ. P. 59 with V.R.C.P. 59. Furthermore, we have previously addressed the very argument that Irving raises here and have explicitly determined that "[c]ontrary to the federal decisions cited by plaintiff, Vermont law requires a judge, who is asked to grant a new trial, to weigh the evi-

dence in the light most favorable to the verdict." *Hardy v. Berisha*, 144 Vt. 130, 133, 474 A.2d 93, 95 (1984); see also *Brueckner*, 169 Vt. at 121, 730 A.2d at 1089 (viewing the evidence in the light most favorable to the verdict when reviewing the denial of a motion for a new trial). Irving has offered no reason to revisit our decision in *Hardy*; therefore, we will not do so. Accordingly, we find no error in the trial court's approach to the evidence.

Turning to the merits of the trial court's decision denying Irving's request for judgment as a matter of law pursuant to V.R.C.P. 50(b) and his request for a new trial pursuant to V.R.C.P. 59(a), we note that although we do not defer to a trial court's decision regarding whether to grant judgment as a matter of law, see *Brueckner*, 169 Vt. at 122, 730 A.2d at 1090; *Hardy*, 144 Vt. at 133, 474 A.2d at 95, the decision to grant or deny a motion for a new trial is committed to the sound discretion of the trial court. *Brueckner*, 169 Vt. at 132-33, 730 A.2d at 1097. If evidence exists that may fairly and reasonably support the jury's verdict, judgment as a matter of law is improper. *Id.* at 122, 730 A.2d at 1090. In contrast, while we still view the evidence in the light most favorable to the jury verdict when reviewing a trial court's decision on a motion for a new trial, we will reverse that decision only when the trial court has abused its discretion. *Id.* at 132-33, 730 A.2d at 1097. We afford the decision of the trial court " 'all possible presumptive support, similar to the support the trial court owes to a jury verdict.' " *Id.* at 133, 730 A.2d at 1097 (quoting *Gregory v. Vermont Traveler, Inc.*, 140 Vt. 119, 121, 435 A.2d 955, 956 (1981)).

We cannot say that the trial court erred by denying Irving's motion for judgment as a matter of law nor, a fortiori, that the trial court abused its discretion by denying Irving a new trial. Although the pilots both had a duty to see and avoid one another, Boyer tes-

tified that at the time of the collision he was in fact "dipping" his wings in order to clear his blind spots before entering the traffic pattern. One of the eye witnesses to the accident, as well as Boyer's expert, testified that the 172 was executing an unusual, nonstandard take-off. And there was extensive testimony about Taylor's failure to radio his intentions in the course of his take-off, which, although not required, was recommended procedure. From these facts, and others, the jury could have concluded that Boyer did not breach his duty of care by failing to see the other plane earlier and avoid it. Therefore, the trial court did not err by denying Irving either judgment as a matter of law or a new trial.

Irving also argues that, despite the court sustaining objections to the testimony of several lay witnesses, inadmissible expert testimony was elicited from them. Specifically, although limiting their testimony, the trial court permitted several of the eye witnesses to testify regarding Boyer's manner of approach to the traffic pattern based on their observations just prior to the collision. All three witnesses were pilots who used the Franklin County Airport. After testifying to his observations regarding how aircraft normally enter the traffic pattern at the airport, one witness testified that relative to those observations, he observed the 150 enter the traffic pattern at what "looked appropriate altitude-wise and angle-wise." Another witness, after describing the angle and direction of the approach by the 150 as he observed it, stated "[n]ormally, when you approach the airport, you come in as he was doing." Finally, a third witness described Boyer's approach as a "regular 45-degree entry to the downwind [leg of the traffic pattern]." Irving's objections to the remainder of the witnesses' testimony were sustained by the court.

While experts may testify to opinions based on facts of which they have no firsthand knowledge, opinions from lay witnesses are limited to matters which they have perceived directly. Compare V.R.E. 701 with V.R.E. 702. Irving argues that, because the witnesses above only observed the planes for a short period of time, their opinions were not based on firsthand knowledge and were therefore expert opinions. He concludes that because the witnesses were not disclosed as expert witnesses, nor were they qualified as experts at trial, all of their testimony regarding the manner of Boyer's approach to the traffic pattern should have been excluded. The duration of the witnesses' observations, however (elicited in the course of their testimony), goes to the weight their opinions are to be accorded, not whether their conclusions are admissible as lay opinion. 1 J.W. Strong, McCormick on Evidence § 10, at 39 (4th ed. 1992) ("If under the circumstances proved, reasonable men could differ as to whether the witness did or did not have adequate opportunity to observe, then the testimony of the witness should come in, and the jury will appraise his opportunity to know in evaluating the testimony."). Therefore, the trial court did not err by allowing the eye witnesses to characterize Boyer's attempted manner of entry into the traffic pattern based on their observations prior to the collision.

Finally, Irving argues that the following jury instruction confused and misled the jury regarding the relevance of Boyer's experience as a pilot to their overall determination regarding negligence:

> [E]xperience or the lack of it and how many flight hours a pilot has says nothing about his duty of care. All pilots, whether high-time, low-time, or student pilots must exercise the same degree of care in flying an airplane. The same duty of care applies to each of them. They are expected to be familiar with

and able to exercise the required duty of care when they are signed off to fly an airplane.

When reviewing jury instructions, we look at the instructions as a whole to determine whether they capture "the true spirit and doctrine of the law." *Harris v. Carbonneau*, 165 Vt. 433, 438, 685 A.2d 296, 300 (1996). The court's statement was made in the context of its instructions specifically on the duty of care, not on the issue of breach, and the instructions accurately state that an inexperienced pilot is not held to a lesser standard of care because of that lack of experience. As we have stated previously with regard to claims of erroneous jury instructions, "[w]e will assign error only where the instructions undermine our confidence in the verdict." *State v. Shabazz*, 169 Vt. 448, 450, 739 A.2d 666, 667 (1999). We cannot say that our confidence has been undermined by the above instruction and, therefore, we find no error.

*Affirmed.*