2004 VT 27

Neal and Terri Jordan v. Nissan North America, Inc. and Jerry's Nissan, Inc.

[853 A.2d 40]

No. 02-446

Present: Amestoy, C.J., Dooley, Johnson and Skoglund, JJ., and Allen, C.J. (Ret.), Specially Assigned

Opinion Filed March 26, 2004
Motion for Reargument Denied May 26, 2004

466

*Jan Peter Dembinski* and *Herbert G. Ogden* of *Liccardi Crawford & Ogden, P.C.*, Rutland, for Plaintiffs-Appellants.

*Shireen T. Hart* of *Eggleston & Cramer, Ltd.*, Burlington, and *Bruce Terlep* of *Swanson, Martin & Bell*, Wheaton, Illinois, for Defendant-Appellee/Cross-Appellant.

*John J. Kennelly* of *Pratt Vreeland Kennelly Martin & White, Ltd.*, Rutland, for Defendant-Appellee.

¶ 1. **Johnson, J.** Plaintiffs Neal and Terri Jordan appeal from a jury verdict in favor of defendants Nissan North America, Inc. and Jerry's Nissan, Inc. on plaintiffs' claims under Vermont's Consumer Fraud Act, 9 V.S.A. § 2453(a). Plaintiffs allege that defendants violated the Act by representing a Nissan Quest as an import when the minivan was actually assembled in the United States. Plaintiffs seek a new trial on the grounds that (1) the jury instructions misstated the law on consumer fraud; (2) the court erroneously allowed defendants to raise affirmative defenses for the first time at trial; (3) the court should have excluded testimony from a witness who was not disclosed as an expert before trial; and (4) the court erred by denying plaintiffs' motion for judgment as a matter of law. Defendant Nissan North America (NNA) cross-appeals the court's decision on NNA's petition for costs, granting NNA's request in part only. We affirm the judgment for defendants, but we reverse and remand part of the trial court's award of costs to NNA.

¶ 2. The facts may be summarized as follows. In August 1998, plaintiffs purchased a Nissan Quest minivan from Jerry's Nissan, Inc. to replace their Ford Taurus wagon with which they had become dissatisfied. At the time of the purchase, the vehicle had a legally-required "Monroney" label affixed to it that stated in large bold lettering, "Three Years Running ... #1 Import Minivan!" Although price was ultimately the deciding factor in purchasing the Quest, plaintiffs wanted a Japanese-made vehicle, and they believed that the Nissan Quest fit that description.

¶ 3. Eventually, the Quest developed a ticking sound in the blower fan, a sound identical to the one plaintiffs' old Taurus wagon made and that contributed to their decision to buy a new vehicle. Plaintiff Neal Jordan began making inquiries about the origin of the Nissan Quest and discovered that it was manufactured and assembled in the United States through a joint venture between Nissan and the Ford Motor Company. Many of the Quest's parts were identical to those used in Ford vehicles, although Nissan designed the Quest. Nissan's facility in Japan also designed, engineered, and produced the tooling necessary to assemble the vehicle. Nissan shipped that tooling from Japan to a facility in the United States where the Quest was ultimately assembled.

¶ 4. Believing they were deceived, plaintiffs wrote to Nissan officials asking that Nissan take the Quest back and return their purchase money. After the request was refused, plaintiffs sued both NNA and

Jerry's Nissan and tried the case by jury. The jury returned special verdicts for both defendants, finding that neither had engaged in any deceptive act or practice. The present appeal followed the trial court's denial of plaintiffs' motion for judgment as a matter of law.

¶ 5. Plaintiffs' claims against defendants arise under § 2453(a) of Vermont's Consumer Fraud Act. 9 V.S.A. § 2453(a). The statute prohibits deceptive acts and practices in commerce, which a complainant must establish with proof of three elements: (1) the representation or omission at issue was likely to mislead consumers; (2) the consumer's interpretation of the representation was reasonable under the circumstances; and (3) the misleading representation was material in that it affected the consumer's purchasing decision. *Id.*; *Carter v. Gugliuzzi*, 168 Vt. 48, 56, 716 A.2d 17, 23 (1998). Under the Act's objective standard, a consumer establishes the first element if she proves that the representation or omission had the tendency or capacity to deceive a reasonable consumer. *Carter*, 168 Vt. at 56, 716 A.2d at 23; *Bisson v. Ward*, 160 Vt. 343, 351, 628 A.2d 1256, 1261 (1993). Messages susceptible to multiple reasonable interpretations may violate the Act if just one of those interpretations is false. *Carter*, 168 Vt. at 57, 716 A.2d at 24. Notably, no intent to deceive or mislead need be proven because § 2453(a) requires only proof of an intent to publish. *Id.* at 56, 716 A.2d at 23. We note that our construction of Vermont's Consumer Fraud Act takes into account interpretations of similar protections under the Federal Trade Commission Act and other state laws. *Id.* at 52, 716 A.2d at 21.

¶ 6. Plaintiffs first claim that they are entitled to a new trial because the court's jury instructions did not accurately reflect the standard applicable to the first element under § 2453(a). To prevail, plaintiffs must show that the jury instructions were both erroneous and prejudicial. *Mobbs v. Cent. Vt. Ry.*, 155 Vt. 210, 218, 583 A.2d 566, 571 (1990). The propriety of a jury instruction depends upon whether the charge, as a whole and not piecemeal, captures "'the true spirit and doctrine of the law.'" *Irving v. Agency of Transp.*, 172 Vt. 527, 530, 768 A.2d 1286, 1290 (2001) (mem.) (quoting *Harris v. Carbonneau*, 165 Vt. 433, 438, 685 A.2d 296, 300 (1996)); *Mobbs*, 155 Vt. at 218, 583 A.2d at 571. Plaintiffs argue that the court's instructions on the first element of consumer fraud did not meet the foregoing standard.

¶ 7. At trial, plaintiffs contended that the Monroney label's representation of the Quest as the "#1 Import Minivan" was deceptive because the vehicle was actually assembled in the United States through a joint venture with a domestic company. They also claimed

that Jerry's should have told them that the Quest was made in a joint venture with Ford because they claim they told Jerry's that they did not want another Ford. The trial court instructed the jury, in pertinent part, as follows:

> In order to find that the Defendants engaged in a deceptive act or practice you must find that each of the following elements has been proven by the Jordans with respect to each Defendant. One, there must be a representation, omission or practice likely to mislead customers. Two, the consumer must be interpreting the message reasonably under the circumstances. And three, the misleading effect must be material, that is, likely to affect the consumer's conduct or decision regarding the product.
>
> I will now explain to you each of these elements in more detail. The first element is an objective standard looking to whether the representation or omission had the capacity or tendency to deceive a reasonable consumer. Actual injury as a result of these representations or omissions is not required to recover under the act. Rather, a consumer is only required to show that the seller's representations or omissions were made and the capacity or tendency to deceive the reasonable consumer.
>
> In considering whether a statement or omission had the capacity or tendency to deceive, there's a general rule of law that individual words and phrases in a larger message cannot themselves determine the meaning of a statement or representation. Each claim delivered to the consumer must be interpreted as a whole in the context of all the other facts communicated. *Thus the Jordans must prove that the claim was deceptive in light of all the information they were given.*

(Emphasis supplied.)

¶ 8. Singling out the last sentence, plaintiffs claim that the instruction misled the jury by allowing it "to focus on just one piece of information given to a consumer, versus the overall impression from all the information."[1] At oral argument plaintiffs' counsel emphasized

---

[1] The proper instruction, plaintiffs argue, would have told the jury to consider the representation or omission "in light of all the information [plaintiffs] were given *in a*

that the court's error was in not adequately explaining § 2453(a)'s first element to prevent jury confusion. We do not share plaintiffs' view of the record. The single sentence on which plaintiffs premise their claim summarized the court's more detailed explanation of the correct standard to satisfy § 2453(a)'s first element. More importantly, the instructions as a whole reflected the proper legal standard on how to assess whether a representation is deceptive because they required the jury to consider the overall impression left by defendants' communications. See *Kraft, Inc. v. FTC*, 970 F.2d 311, 314 (7th Cir. 1992) (claim is deceptive if it is likely to mislead reasonable consumers after examining overall net impression of representation); *Avis Rent A Car Sys., Inc. v. Hertz Corp.*, 782 F.2d 381, 385 (2d Cir. 1986) (unfair advertising claim requires fact finder to consider advertisement in its entirety, like a mosaic, and not in separate pieces); *FTC v. Sterling Drug, Inc.*, 317 F.2d 669, 674 (2d Cir. 1963) (deception must be measured by ultimate impression advertisement leaves on reader since consuming public does not normally study or weigh each word in an advertisement). The trial court's instructions on § 2453(a) were neither erroneous nor prejudicial.

¶ 9. Plaintiffs next argue that they were prejudiced by the court's decision to allow defendants to present evidence of two affirmative defenses — set-off and compliance with statute — because defendants did not identify them in their answer to the complaint. We do not reach the issue of set-off, which relates to the damages component of plaintiffs' claims, because the issue became moot when the jury relieved defendants of any liability for fraud.

■ ¶ 10. For a different reason — lack of preservation — we do not address plaintiffs' argument on the compliance-with-statute defense. Unlike set-off, the compliance-with-statute defense relates to liability and not to damages. It is well settled, however, that matters not raised at trial may not be raised for the first time on appeal. *Harrington v. Dep't of Employ. & Training*, 152 Vt. 446, 448, 566 A.2d 988, 990 (1989); see also V.R.A.P. 28(a)(4) (appellant's brief must explain how issues were presented below and preserved for appellate review). Plaintiffs did not object to the statutory compliance evidence at trial on the basis they argue on appeal. Rather, counsel objected to the evidence on hearsay grounds only. Nowhere in the record of the exchange between counsel and the court to which plaintiffs have

---

*particular communication.*" (Emphasis supplied.) At oral argument we asked plaintiffs' counsel to explain the difference in the two instructions, but he could not articulate one.

referred can we discern even a hint of the argument they raise here about failure to plead an affirmative defense. We decline to address the argument. See *In re S.B.L.*, 150 Vt. 294, 297, 553 A.2d 1078, 1081 (1988) (Court will not search the record for error).

¶ 11. The next ground plaintiffs present for reversal and a new trial pertains to testimony of a witness who was employed by defendant NNA and who, ironically, plaintiffs called in their direct case. The witness, Louisa Bowers, was responsible for Nissan's Quest program since 1991. Before trial, NNA disclosed to plaintiffs that it intended to call Bowers as a witness at trial to testify about the Nissan-Ford relationship.[2] On appeal, plaintiffs contend that the court should have excluded her testimony about the Quest's design and manufacturing and about Nissan's relationship with Ford because it was expert testimony that should have been disclosed before trial. See V.R.C.P. 26(b)(4) (setting forth expert witness disclosure obligations during discovery). Plaintiffs' contention has little merit. The trial court rejected plaintiffs' characterization of Bowers's testimony as expert testimony, and we agree. Bowers provided factual testimony about the Quest's manufacture and the joint venture between Ford and NNA. Moreover, the record shows that it was plaintiffs' counsel who opened the areas of inquiry to which plaintiffs now object. Plaintiffs' counsel asked Bowers questions about the Quest's design and engineering, the joint venture between Ford and Nissan, which company had authority over workers on the assembly line, who trained the employees working on the Quest, where the parts comprising the Quest originated, and labeling requirements related to the Quest. Through defense counsel's examination, Bowers provided more detail on those topics. Under the circumstances, we fail to see the prejudice or surprise that plaintiffs claim resulted from Bowers's testimony. See *Keus v. Brooks Drug, Inc.*, 163 Vt. 1, 7, 652 A.2d 475, 480 (1994) (error predicated on erroneous admission of evidence requires showing of prejudice). The trial

---

[2] In their reply brief, plaintiffs contend they were surprised by Bowers's testimony in part because NNA did not disclose her in its response to two interrogatories plaintiffs propounded early in discovery. As far as we can tell from the record, plaintiffs never complained about the lack of disclosure to the trial court nor sought sanctions against NNA for the allegedly late disclosure. There is no dispute, however, that'NNA notified plaintiffs before trial that it intended to have Bowers testify and that NNA would have made her available for a deposition. Apparently, plaintiffs decided to forego a deposition, but called Bowers to testify in their case-in-chief anyway.

court's decision was soundly within its discretion, and we will not disturb it.

¶ 12. Plaintiffs also claim the court erred by overruling their numerous and unequivocal objections to Bowers's testimony on federal reporting and labeling laws applicable to automobiles. They claim she provided expert legal opinion testimony that the court should have excluded because NNA did not furnish pretrial disclosure of her expertise. Like the previous claim, we find no merit to plaintiffs' contention. Contrary to plaintiffs' assertion, the grounds for their objections at trial were not the grounds they assert now on appeal. See V.R.E. 103(a)(1) (error may not be predicated on admission of evidence unless a party's rights are substantially affected and a specific and timely objection was made and ruled on by court); see *Bull v. Pinkham Eng'g Assocs.*, 170 Vt. 450, 459, 752 A.2d 26, 33 (2000) (to effectively raise an objection, party must present issue to trial court with specificity and clarity so that trial court may rule on it).

¶ 13. Through Bowers, NNA sought to show the jury that NNA designated the Quest as an import in part due to federal regulations.[3] Bowers testified that in her job with NNA, which included overseeing compliance with government regulations, she was required to become familiar with federal reporting and labeling obligations for automobile makers. Counsel for plaintiffs interposed many objections to her testimony, but most were on relevance and hearsay grounds. We can find only isolated instances where counsel objected because Bowers allegedly offered an expert legal opinion. In those instances, plaintiffs' counsel acquiesced to the court's ruling that Bowers could testify based on her understanding of the law. Rule 701 of the Vermont Rules of Evidence permits that type of lay opinion testimony so long as the testimony is based on the witness's own perception and is helpful to the fact finder. V.R.E. 701; see also *Irving*, 172 Vt. at 529, 768 A.2d at 1289 ("[O]pinions from lay witnesses are limited to matters which they

---

[3] Plaintiffs also claim the court should not have allowed Bowers to testify about her understanding of federal law to prove NNA's "corporate state of mind" because she did not testify about "what she had personally witnessed" as to that state of mind. This objection was also made for the first time in this Court and was never presented to the trial court. We therefore do not address it. We note, however, that to the extent NNA's intent or state of mind was relevant, an issue about which we express no opinion, it may be proven through actions or statements of officers or employees who have apparent authority to make policy decisions for the company. See *United States v. Basic Constr. Co.*, 711 F.2d 570, 573 (4th Cir. 1983) (corporate state of mind or intent may be established through statements or actions of officers or employees who have authority to make corporate policy).

have perceived directly."). NNA's counsel had already established that Bowers was familiar with certain aspects of federal law because her job with the company required it. We thus find no reversible error on this record.

¶ 14. Plaintiffs next claim that the trial court should have granted their motion for judgment as a matter of law. Plaintiffs argue that if the court had excluded the testimony Bowers offered (and to which they objected) the record would have mandated judgment for plaintiffs as a matter of law. We have affirmed the court's decision to admit Bowers's testimony. Thus, whether plaintiffs were entitled to judgment as a matter of law in the absence of her testimony is a purely hypothetical question we will not entertain.

¶ 15. We turn now to NNA's cross-appeal on costs. Following the jury's defense verdict, NNA filed a motion for costs in the amount of $15,480.58. The bill of costs NNA prepared included air fare and hotel accommodations for seven witnesses NNA anticipated would testify at trial. The bill also included attendance fees, in-state mileage, and out-of-state mileage for those seven individuals. Of the seven people on NNA's list, only three actually testified. The trial court eventually awarded NNA a portion of its request, rejecting all costs associated with travel — whether inside or outside of Vermont — because the court said it could find no authority to award travel costs. The court did not address NNA's request for witness fees permitted by 32 V.S.A. § 1551(1), but it granted the company's request for the cost of deposing plaintiffs under V.R.C.P. 54(g). Seeking all of its costs, NNA filed this cross-appeal.

¶ 16. Awarding costs to the prevailing party in a civil action is a discretionary matter for the trial court. *Peterson v. Chichester*, 157 Vt. 548, 553, 600 A.2d 1326, 1329 (1991); see V.R.C.P. 54(d)(1) ("Costs other than attorneys' fees shall be allowed as of course to the prevailing party, as provided by statute and by these rules, unless the court otherwise specifically directs."). We therefore review the court's order for an abuse of discretion. *Peterson*, 157 Vt. at 553, 600 A.2d at 1329.

¶ 17. NNA argues that the court abused its discretion by failing to address its request for witness fees under 32 V.S.A. § 1551(1). Section 1551(1) provides for a fee of ten dollars per day for a witness's attendance at trial. NNA's motion for costs under V.R.C.P. 54 itemized the witness fees it sought under the statute, yet the court's order is altogether silent on the matter. Plaintiffs argue that we should deny

NNA's request because NNA did not include a witness fee certificate as required by 32 V.S.A. § 1553. See 32 V.S.A. § 1553 ("A party who produces a witness in superior court shall procure a certificate signed and sworn to by such witness, specifying the number of miles from his usual place of abode to the place of trial, and the number of days he attended as a witness, before the travel and attendance of the witness shall be allowed such party in his bill of costs."). In *Higgins & Bogue v. Hayward*, 5 Vt. 73 (1833), we held that § 1553 did not deprive the trial court of its power to take evidence on the issue of costs where a certificate complying with the statute was lacking. *Id.* at 74. We have no reason to reconsider that holding here. We remand the issue of witness fees to the trial court so it may consider NNA's claim in the first instance.

¶ 18. As to the issue of travel costs, NNA argues that the trial court committed two errors. First, NNA claims that 32 V.S.A. § 1551(4) allows reimbursement for costs related to witness travel within the State of Vermont. Second, NNA alleges that the court's denial of its costs incurred to bring witnesses to trial from out of state, including air fare and hotel accommodations, violates the Commerce and Equal Protection Clauses of the United States Constitution. As to the first issue, we agree with NNA that the court's decision on in-state travel was error. Section 1551(4) of Title 32 allows the superior court to award witnesses a fee for in-state travel at the rate of eight cents per mile each way. 32 V.S.A. § 1551(4). The court's conclusion that it had no authority to award such costs stands contrary to the express intent of the Legislature and must be reversed for reconsideration under the statute.

¶ 19. Awarding costs for out-of-state travel presents a different issue. NNA argues that § 1551(4) unconstitutionally discriminates in favor of parties who live in Vermont in violation of the Commerce Clause of the United States Constitution. The Commerce Clause serves to further free trade among the states. *Frank W. Whitcomb Constr. Corp. v. Comm'r of Taxes*, 144 Vt. 466, 470, 479 A.2d 164, 167 (1984). The party urging a violation of the clause based on a statute that makes no distinction between in-state and out-of-state residents must demonstrate that the statute has a disproportionate impact on out-of-state residents. See *In re Cent. Vt. Pub. Serv. Corp.*, 167 Vt. 626, 628, 711 A.2d 1158, 1160 (1998) (mem.) (upholding a facially neutral rate classification under Commerce Clause challenge where record contained no evidence that classification affected out-of-state residents

disproportionately). NNA has wholly failed to make that showing here. Without pointing to any record support, NNA asserts that § 1551(4)'s in-state travel costs limit imposes a special burden on foreign residents because their witnesses will presumably come from out of state and Vermont residents do not have to incur the same costs. Bare assertions are an insufficient basis upon which to find a violation of the Commerce Clause or an abuse of the trial court's discretion. We therefore reject NNA's challenge to the court's award on this ground.

¶ 20. We find NNA's claim under the federal Equal Protection Clause similarly unavailing. To find a violation of equal protection in this case we would have to conclude that the limit for in-state travel costs was arbitrary and had no legitimate state purpose. See *In re Picket Fence Preview*, 173 Vt. 369, 374, 795 A.2d 1242, 1247 (2002) (economic regulation under Equal Protection Clause must pass so-called rational-basis test, which only requires showing that classification has legitimate governmental purpose); *Governor Clinton Council, Inc. v. Koslowski*, 137 Vt. 240, 246, 403 A.2d 689, 693 (1979) (to withstand equal protection challenge, classification or distinction must rest on a real, unfeigned difference, have some relevance to legislative purpose, and lead to a difference in treatment that is not so dissimilar as to be arbitrary). That we cannot do. The policy to limit reimbursement for travel within the State of Vermont can be seen as a means to encourage parties — whether or not Vermont residents — to limit litigation costs. The distinction may also be viewed as a way to conserve judicial resources by eliminating post-judgment disputes over the reasonableness of out-of-state travel costs. We therefore affirm the trial court's decision to deny NNA any costs related to bringing witnesses to Vermont from out of state for trial.

*Judgment for defendants on liability under 9 V.S.A. § 2453(a) is affirmed. The award of costs to defendant Nissan North America, Inc. is affirmed in part and reversed in part, and the matter is remanded for further proceedings consistent with the views expressed herein.*