*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2011-275

MARCH TERM, 2012

| | | |
|---|---|---|
| Derek Allen and Melinda Allen | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Washington Unit, |
| v. | } | Civil Division |
| | } | |
| James Moorcroft | } | DOCKET NO. 89-2-10 Wncv |

Trial Judge: Geoffrey W. Crawford

In the above-entitled cause, the Clerk will enter:

Defendant James Moorcroft appeals pro se from the trial court's order granting judgment and an award of attorney's fees to plaintiffs Derek and Melinda Allen in connection with issues arising from their purchase of two motor vehicles from defendant and the financing arrangements associated therewith. We affirm in part and reverse in part.

Plaintiffs sued defendant after purchasing two used cars from him, both financed by defendant. They alleged, among other things, that defendant violated the Vermont Consumer Fraud Act, the Vermont Motor Vehicle Retail Installment Sales Financing Act, and the federal Truth in Lending Act for failing to properly disclose the effective interest associated with the financing; they also made breach of warranty claims based on the condition of the vehicles. Defendant countersued seeking credit for certain insurance proceeds paid to plaintiffs.

In connection with the suit, in January 2010 the court granted plaintiffs' ex parte motion for trustee process, attaching up to $20,000 of defendant's non-exempt goods, effects and credits held at the Merchants Bank. The court found that there was a reasonable likelihood that plaintiffs would obtain judgment, and given defendant's history of avoiding judgments against him, there was a clear danger that if notified in advance defendant would withdraw the funds, leaving insufficient attachable property to satisfy a judgment. In February, 2011, the court held a hearing on defendant's motion to release trustee funds and authorized Merchants Bank to release $700 of the attached monies to defendant, leaving $911.90 in bank account funds subject to the attachment.

Following a March 2011 bench trial, the court granted judgment on most counts to plaintiffs, finding as follows. Defendant has long been involved in the sale and financing of used cars, at times operating under the name "Pride Auto." He no longer held a dealer's license at the time of the events in question. Defendant provides financing for his customers through "Standard Auto-Finance" of Oakdale, Connecticut, a sole proprietorship that he owns. In November 2008, plaintiffs purchased a 1995 Nissan Sentra from defendant. The purchase price was $2950 plus a $1000 financing fee. Plaintiffs made a $700 down payment and Standard Auto-Finance financed the balance. The financing agreement itself reflected an interest rate of 0% and a weekly "administrative fee" of $19.00.

Because the Nissan had numerous problems from the outset, after four months of attempting to fix the car, defendant allowed plaintiffs to trade the Nissan for a 1994 Honda Accord. The price for the Honda was $2800 plus a $1000 financing fee. Defendant gave plaintiffs $500 as a trade-in allowance for the Nissan. Standard Auto-Finance again provided the financing. The agreement provided for a sixty-six week term, with weekly payments of $50 plus a weekly $19 administrative fee.

The Honda was prone to breakdowns, and the odometer did not work. Three weeks after the purchase, the car overheated. Plaintiffs returned the vehicle for repairs, and defendant provided them with a loaner vehicle at no charge. Five weeks later, defendant returned the Honda to plaintiffs. The car no longer overheated; defendant had also installed a used odometer from another vehicle. In August 2009, the overheating problem returned, and plaintiffs took the vehicle to a friend who was a mechanic. Their mechanic found that the connection between the radiator and the engine had sheared off and had been repaired with epoxy. It had broken for a second time, causing the engine to overheat. When plaintiffs took the vehicle to their mechanic, they stopped making payments on the car note. They were substantially in compliance with the note's terms up to that point. Defendant repossessed the Honda. The total amount paid by plaintiffs to defendant consisted of a cash down payment on the Nissan ($700) plus total finance charges of $1371, for a total of $2071.

Before defendant repossessed the Honda, Ms. Allen was involved in a one-vehicle accident that damaged the side of the car. Plaintiffs' insurer issued a check for $1,171 payable to Mr. Allen and "Pride/Salvage Auto Sales." Defendant endorsed the check. Ms. Allen arranged for her mechanic to make the necessary repairs, but defendant repossessed the vehicle before the repairs were completed. Plaintiffs then kept the insurance payment for their own use.

Based on these findings, the court granted judgment to plaintiffs on many of their claims. It first concluded that defendant was operating an unlicensed auto sales business and lending money to consumer creditors without complying with the Vermont Motor Vehicle Retail Installment Sales Financing Act (Motor Vehicle Financing Act), 9 V.S.A. §§ 2351-2362, and the federal Truth in Lending Act, 15 U.S.C. §§ 1601-1667f. Both of these laws required detailed disclosure of effective interest rates and other terms of the loan. The court explained that defendant violated the disclosure requirements by concealing the effect of the $1000 financing fee and the $19 weekly "administrative fee"—both of which were obviously interest charges in disguise—on the cost of the two loans. While the financing agreement described a 0% interest loan, the effective annual cost of financing through the loan was approximately 78%.

The court found that these violations triggered the sanctions provided by each act. The remedy for failure to make required disclosures under the Vermont act was the loss of the right to sue for unpaid finance charges and the return of finance charges to the customer plus attorney's fees. See 9 V.S.A. § 2361(a). In this case, plaintiffs had paid $1371 in total finance charges on both vehicles. Because the federal Truth in Lending law had a one-year statute of limitations and plaintiffs bought the Nissan more than one year before filing suit, the court calculated damages under the federal law only with reference to finance charges paid in connection with the Honda purchase. By statute, the penalty for violation of the federal act was twice the amount of the finance charges paid, which here amounted to $1366. See 15 U.S.C. § 1640(a)(2)(A)(i).

The court next considered plaintiffs' consumer fraud claim. To establish a violation of the Vermont Consumer Fraud Act (CFA), the court explained, plaintiffs needed to show that: (1) the representation or omission at issue was likely to mislead them; (2) their interpretation of the

2

representation was reasonable under the circumstances; and (3) the misleading representation was material in that it affected their purchasing decision. Jordan v. Nissan N. Am., 2004 VT 27, ¶ 5, 176 Vt. 465. Plaintiffs based their CFA claim on defendant's misrepresentation regarding the finance charges and interest; an alleged violation of the odometer disclosure requirement; an alleged violation of defendant's promise to pay for half of any repairs; and a misrepresentation that the Honda was in good condition.

The court found that misrepresenting an exorbitant interest rate as 0% violated the CFA. It explained that defendant's misrepresentation was reasonably likely to mislead plaintiffs and it affected their decision to purchase both cars. The court rejected plaintiffs' CFA claims based on warranty and odometer-disclosure issues. It found that they were entitled to $2071 in damages under the CFA, in addition to attorney's fees.[1] Concluding that allowing plaintiffs to recover under both the CFA and the Motor Vehicle Financing Act would provide them a double recovery, the court awarded them the greater damages under the CFA and disregarded the damages under the Motor Vehicle Financing Act.

The court also found in favor of plaintiffs on their claim that defendant breached the implied warranty of merchantability as to the Nissan, but concluded that because plaintiffs were excused from any further payments on the car by virtue of the Motor Vehicle Financing Act, they were not entitled to any additional damages on the basis of the implied warranty claim. The trial court rejected plaintiffs' claims for conversion in connection with the repossession and breach of express warranty concerning the Honda.

Finally, the court rejected defendant's counterclaims. Defendant sought an award of the amounts due under the financing agreement, and he sought judgment for the amount of the insurance check for damage to the Honda that plaintiffs had kept for their own use without paying for the repair. The court rejected the first claim because defendant's violation of the federal Truth in Lending Act excused plaintiffs from making further payments under the financing agreements. The court also rejected the second claim, finding that defendant voluntarily signed the check over to plaintiffs without any conditions. The court explained that as a secured party, defendant was a named insured and he had an interest in the policy. He gave up that interest, however, when he endorsed the check. At that point, plaintiffs were free to deposit the check, which they did. The evidence showed that plaintiffs intended to repair the car and had scheduled the body work. When defendant repossessed the vehicle, plaintiffs kept the insurance payment. The court found that they had no legal obligation to do anything else. The court thus entered judgment for plaintiffs on defendant's counterclaim.

Plaintiffs subsequently requested attorney's fees of $8470 based on their CFA claim and submitted an affidavit in support of this request. Defendant opposed the motion. Following a hearing, the court granted plaintiffs' request. The court explained that an award of attorney's fees was mandatory in CFA cases. 9 V.S.A. § 2461(b). The court found the total number of hours expended (48.4) was reasonable for this matter, which involved pre-trial attachment issues and a trial on the merits, and it found the hourly rate of $175 normal by community standards. As noted above, defendant also filed a motion for reconsideration, which was largely denied. Defendant appealed.

I.

---

[1] The court initially awarded treble damages to plaintiffs but revised its ruling to award the $2071 following defendant's motion to reconsider.

Defendant first argues that the court erred by failing to hold a hearing on his motion to release trustee funds and by maintaining an attachment on exempt funds. As to this issue, the record indicates the following. As noted above, the court granted plaintiffs' ex parte motion for a prejudgment trustee summons in January 2010. See generally 12 V.S.A. chapter 121 (governing trustee process); V.R.C.P. 4.2 (describing trustee process proceedings). Pursuant to a trustee summons, defendant's bank disclosed that it was holding $1611.90 in defendant's bank account.

In December 2010, defendant filed a motion to release trustee funds, arguing in relevant part that the seized assets were exempt. In his motion, he asserted that the exempt funds seized included: social security income of $726.04; 75% of wages of $757.40; previously issued checks of $700, $252.50, $108.42, and $100; and $700 in bank deposits or savings. He did not explain the disparity between the claimed exempt assets—totaling $3,344.36—and the total funds attached— only $1611.90. Nor did he explain why he believed that most of the deposited checks were exempt. Plaintiffs opposed the motion, noting that defendant had the burden of proving that the seized funds were exempt. They asked the court to order defendant to provide a list of all assets and liabilities with current values, copies of all bank records within the past year, and proof that he was receiving social security benefits and that those benefits were deposited into the subject bank account prior to the trustee process order. Following a February 2011 hearing, the court released $700 of the funds held by the trustee based on the statutory exemption for a debtor's interest, not to exceed $700, in bank accounts. See 12 V.S.A. § 2740(15). The court ordered that Merchant's Bank hold the remaining $911.90 pending resolution of the lawsuit. Defendant did not order a transcript of this hearing, so we cannot discern what evidence, if any, he presented in support of his claim that exempt funds had been seized; nor can we review the trial court's findings, if any, on this subject.

After trial, defendant filed another motion requesting the release of trustee funds to him. In his motion, defendant identified the same sources of the funds in his bank account as set forth above. Defendant asserted that $726.04 of funds in the account derived from another person's social security benefit and did not belong to him, and he asserted that $757.04 of the funds in the account derived from wages subject to a 75% exemption. Although he asserted vehemently that the remaining sources of the funds in the account were exempt, defendant again failed to identify the legal basis for the claimed exemptions. And again, defendant did not explain how his accounting of the source of the monies in the account could be accurate when the sum of the inputs he described was more than double the assets initially attached.

The court heard argument from defendant on his renewed motion, reminding him several times that the court had previously dealt with the arguments raised by defendant in its prior hearing on the subject. Noting that defendant's own accounting of the monies in the bank account included non-exempt assets totaling more than the $911.90 remaining in the attached account, the court declined to release additional attached funds to defendant. The court acknowledged that the total deposits disclosed by defendant exceeded the balance actually attached but stated that the exemption statute did not require the court to determine who spent what from which check.

On appeal, defendant repeats his arguments. He essentially contends that the trial court failed to give him the opportunity through a hearing to show that additional exemptions applied, and he requests a remand for an evidentiary hearing. Defendant's arguments are unpersuasive for several reasons. First, the record reflects that the trial court did hold a hearing on defendant's motion to release the trustee funds in February 2011. After that hearing, the court released $700 from the attachment pursuant to a statutory exemption. We know that defendant raised in

advance of that hearing the same arguments about exempt assets that he now seeks to prove through another hearing. As noted above, we do not have the benefit of a transcript of the February 2011 hearing, although we do have the court's order following that hearing. To the extent that defendant is arguing that the trial court did not allow him to present evidence at that hearing, or that the trial court's ruling granting his motion only to the extent of releasing $700 from attachment and denying it with respect to the balance of the attached funds was not supported by evidence at that hearing—both issues that we cannot fairly address without reviewing the transcript—he has forfeited review of those questions by failing to provide a transcript of that hearing. In Re S.B.L., 150 Vt. 294, 307 (1988) ("It is the burden of the party challenging a ruling to furnish the reviewing court a transcript of the proceeding involved. The purpose is to prevent injustice being worked against the party prevailing below on the ruling in question. To omit to incorporate into the record on appeal the transcript of applicable testimony and proceedings without authorization is to forfeit review of questions requiring reference to the transcript." (quotation omitted)). We recognize that the obligation to provide a transcript can impose hardship, but the absence of one in this case prevents us from fairly addressing defendant's claims. Because the party appealing a trial court's judgment bears the burden of persuading this Court to reverse, that party also carries the burden of ensuring that we have a sufficiently complete record to conduct our review. Id.

Second, although defendant has continued to argue that the funds in the attached account are exempt, with two exceptions, he failed to identify for the trial court any purported legal basis for his argument. Under the law, defendant bears the burden of proving that the funds are exempt from attachment. See Hooper v. Kennedy, 100 Vt. 314, 314 (1927) (recognizing that "burden was on the defendant to establish affirmatively all the facts necessary to bring the particular articles replevied within the statute of exemption"). In his pleadings defendant has repeatedly listed various checks, identified primarily by check number, that he claims to be exempt; however, in his motions to the trial court, he never indicated the legal basis for his assertions that the funds were exempt, and he never made a proffer of the evidence he would provide at another hearing that would demonstrate that the deposits were exempt. The only two exceptions are his assertion that some of the funds belonged to another person—John Severance—, and his claim that some of the funds derived from his own wages.

The latter claim misapprehends the nature of the exemption for 75% of earnings pursuant to 12 V.S.A. § 3170. This exemption applies to "earnings," not to funds held by a debtor that derived from wages. The purpose of this statute is to regulate the process of garnishing a debtor's wages. See In re Riendeau, 293 B.R. 832, 836 (D.Vt. 2002) ("Relevant Vermont case law, although meager, underscores [12 V.S.A.] § 3170's plain meaning, and demonstrates that it was enacted to establish the legal process by which a judgment debtor's earnings are sought to be garnished by a judgment creditor."), aff'd, 336 F.3d 78 (2d Cir. 2003). If plaintiffs had served a trustee summons for the garnishment of wages on defendant's employer, this provision would have applied and would have required that defendant's employer only hold back 25% of each paycheck by way of trustee process. This exemption does not apply to monies that were paid to a debtor and are now held in the debtor's bank account just because the funds can be traced back to a paycheck.

So defendant's only asserted basis for exemption that would potentially affect the scope of the attachment in this case is his claim that some portion of the funds derived from a Social Security check payable to John Severance. As the trial court acknowledged, the trustee process cannot reach funds belonging to someone other than the debtor. Defendant's representations about the source of funds in the account do not tell us what funds, if any, he claims John Severance owns; as noted above, and as recognized by the trial court, the total deposits itemized

by defendant are more than double the total funds actually attached, so somebody spent some of the itemized funds before the trustee summons. The time to offer evidence to support this one claimed exemption was the February 2011 hearing. For the reasons set forth above, we cannot assume that the trial court declined to allow this evidence, or committed reversible error in weighing the evidence presented, because we do not have a transcript.[2]

## II.

Defendant next argues that the court rushed his presentation during trial and did not give him a full opportunity to be heard. This argument is not supported by the record. A trial court has broad discretion in controlling the manner and mode of the presentation of evidence at trial. See V.R.E. 611(a); Bevins v. King, 147 Vt. 203, 207 (1986). The record shows that the court acted well within its discretion here. The court provided defendant with ample time to present his case and demonstrated a great deal of patience in the hearing in this case. Indeed, the court tried to help defendant stay on track during the trial when his cross-examination and testimony began to veer into irrelevant material. Defendant fails to demonstrate any error, and we reject his claim that the court showed a "pattern of bias" in conducting this case.

## III.

Defendant next argues that the attorney's fee award was excessive because he prevailed in five of the seven claims against him. In fact, plaintiffs prevailed on four out of their seven claims. In any event, an award of attorney's fees was mandatory under the CFA. See 9 V.S.A. § 2461(b); L'Esperance v. Benware, 2003 VT 43, ¶ 21, 175 Vt. 292 (The CFA "mandates that where a plaintiff has made a showing of fraud, the court will award reasonable attorney's fees."). As to the amount of fees, plaintiffs' attorney argued that she had approached the case as a whole and that her hours reflected this. The court implicitly agreed. It concluded that the 48.4 hours expended by counsel was reasonable, particularly given that there had been pre-trial attachment issues and a trial on the merits. The court acted within its discretion in implicitly concluding that the various claims in this case arose out of the same consumer transaction and involved the same core set of facts.

We upheld a similar result in L'Esperance, 2003 VT 43, ¶¶ 21-25 (recognizing that a "plaintiff's failure to receive all relief requested is not dispositive, and the application of a mathematical ratio to compare the total number of issues raised with the number plaintiff prevailed upon is similarly unhelpful to a reasonable fee determination"). In L'Esperance, like here, the defendant argued that the plaintiffs' attorney fee award under the CFA should have been limited to the hours expended on the plaintiffs' CFA claim and should not have included work on their negligence and security deposit claims. The trial court recognized that "[a]ll of the claims that went to trial arose out of the consumer transaction which forms the basis of the consumer fraud claim" and reasoned that the "plaintiffs' lawsuit [was] not one which [could] be viewed as a series of discrete claims so that the hours expended [could] be divided on a claim-by-claim basis." Id. (quotations omitted). We concluded that the trial court did not abuse its discretion in concluding that the CFA claim and the other claims sprang from a common core of facts.

---

[2] In his brief, defendant has included a copy of a check made out to Severance. He fails to show that this evidence was introduced below, and we do not consider it. Hoover v. Hoover, 171 Vt. 256, 258 (2000) (Supreme Court's review on appeal is confined to the record and evidence adduced at trial; Court cannot consider facts not in the record).

Likewise, the trial court was faced with a similar situation here and did not abuse its discretion in concluding that plaintiffs' legal fees all sprang from a common core of facts, and thus in declining to reduce the fee award on the basis that defendant prevailed on some claims. See id. ¶ 21 ("When determining an award of attorney's fees, the trial court must make a determination based on the specific facts of each case and, accordingly, we grant the trial court wide discretion in making that determination.").

IV.

Finally, defendant argues that the court erred in rejecting his counterclaim for the insurance proceeds, and argues that the $1221 insurance check paid by plaintiffs' insurer to him and Mr. Allen for the purpose of repairing the vehicle in which both parties had a legal interest should be credited against plaintiffs' judgment against him.

The trial court's judgment against defendant on this count was apparently predicated on its finding that defendant signed the check over to plaintiffs "without any conditions." In essence, the trial court appears to have found that defendant conveyed his interest in the insurance proceeds to plaintiffs without consideration. We recognize that a trial court's findings are entitled to considerable deference, but "this Court must reverse the decision if the [trial court's] factual findings are not supported by the evidence, or if its conclusions are not supported by the findings." State v. Giard, 178 Vt. 544, 546 (2005); see also Spaulding v. Butler, 172 Vt. 467, 475 (2001) (same).

Evidence relating to the circumstances surrounding defendant's endorsement of the insurance check is sparse. Defendant called one witness who was present at the time defendant endorsed the insurance check; that witness testified that Ms. Allen represented that she needed the check endorsed because she had lined up a mechanic who would not start work on the car before she got the money. Defendant testified that he endorsed the check back to Ms. Allen "so that she could have some brother-in-law or somebody get the car fixed right away." Ms. Allen did not contradict these accounts. She testified that the insurance company evaluated the damage to her vehicle from the single-car accident and sent her a check for $1221 payable to her husband and "Pride/Salvage Auto Sales." She acknowledged that she had defendant sign the check and explained that after cashing the check, "[W]e were supposed to meet with [the mechanic]" to look at doors and paints and to get it fixed. Defendant repossessed the car before she was able to get the repairs done. Nothing in the record supports any inference other than that when defendant signed his interest in the insurance proceeds over to plaintiffs the parties had a mutual understanding that plaintiffs would be using the proceeds to repair the vehicle in which both held a legal interest. In fact, the trial court found that at the time plaintiffs accepted defendant's interest in the insurance proceeds they intended to repair the car and had scheduled the body work. We cannot find in this record support for the suggestion that defendant essentially gifted his interest in the insurance proceeds to plaintiffs.

What is undisputed is that, although plaintiffs intended to spend the money to repair the vehicle at the time defendant endorsed the check, they opted to keep the funds after defendant repossessed the vehicle. As we have explained, "when one conveys the title to his property to another, in reliance upon the latter's promise, a conscientious obligation is imposed, a violation of which for the grantee's own advantage is such a fraud that equity will make him a constructive trustee for the benefit of the grantor or his beneficiary. And this will be so, though the grantee enters into the agreement with an honest intention of performing it." Miller v. Belville, 98 Vt. 243, 248 (1924); see also McGann v. Capital Sav. Bank & Trust, 117 Vt. 179, 189 (1952) ("It is a familiar principle of equity that a trust is implied whenever the circumstances

7

are such, that the person taking the legal estate, whether by fraud or otherwise, cannot enjoy the beneficial interest without violating the rules of honesty and fair dealing.") (bank that received proceeds of fire insurance policy for chairs owned by buyers but stored at manufacturer's plant that burned held proceeds in trust for the benefit of the owner of the chairs).

These cases reflect the general principle that a constructive trust is an appropriate remedy for unjust enrichment. Although defendant repossessed the car, the collateral he reclaimed was diminished in value by the damage the insurance proceeds were intended to remedy. In the meantime, plaintiffs were left with the benefit of those insurance proceeds. See generally A. Scott & W. Fratcher, The Law of Trusts, § 462 at 304 (4th ed. 1989) ("A constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it.").

As set forth above, the insurance check was written to both parties, each of whom, at that time, had an interest in the vehicle. The funds were payable on account of damage to the car, and the parties agreed to spend the funds to repair the damage. Plaintiffs were not entitled to keep the money for themselves. We thus direct the trial court to enter judgment in favor of defendant on his counterclaim in the amount of $1221, which judgment shall offset plaintiffs' judgment against defendant in that amount.

The court's decision is affirmed with the exception of its denial of defendant's counterclaim for insurance proceeds, which is reversed. This case is remanded for entry of judgment on defendant's counterclaim in the amount of $1221.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Beth Robinson, Associate Justice