*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2015-225

DECEMBER TERM, 2015

| | | |
|---|---|---|
| Jason Fisher | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Caledonia Unit, |
| v. | } | Family Division |
| | } | |
| | } | |
| Valerie Coolidge | } | DOCKET NO. 255-10-03 Cadm |

Trial Judge: Robert R. Bent

In the above-entitled cause, the Clerk will enter:

Mother appeals pro se from a superior court order granting father's motion to modify parental rights and responsibilities. She contends the court committed a number of errors in changing custody of the parties' minor child. We affirm.

The parties are the parents of M.C., who was twelve years old at the time of the hearing in this matter. In May 2014, father moved to modify parental rights and responsibilities by transferring custody from mother to father. At the time, M.C. lived in Montpelier with mother and mother's three other children: two boys who were sixteen and seven years old, and a girl who was two years old. The children had different fathers from M.C. Father lived in Groton with his long-term partner and had parent-child contact with M.C. every Tuesday evening and every other weekend from Friday to Monday. Father also had weekend visits with a nine-year old daughter by a different mother.[1]

Father's modification motion alleged that mother had been hospitalized on a number of occasions within the last several months for mental health issues, the latest occurring two weeks earlier when she locked herself in a bathroom and cut herself with a razor. Following a number of status conferences, father filed an amended motion in late December 2014, and the court set a hearing for mid-January 2015. The amended motion listed four areas of concern to father: mother's mental health status; M.C.'s school attendance; incidents at mother's home to which the police had responded; and mother's interest in the use of medications for M.C. before looking at other factors affecting the child's mental health.

---

[1] The trial court mistakenly referred to father's nine-year-old daughter as his current partner's daughter.

At the initial hearing in January 2015, both parents testified about their respective home situations and concerns about M.C. Father introduced evidence of M.C.'s numerous school absences and failure to keep up with her school work. He also introduced, without objection, Montpelier police records showing a number of police visits to mother's home during the preceding several months. Mother acknowledged the incident in which she had locked herself in the bathroom and cut herself with a razor. She recalled that M.C. and her older brother were home at the time, that her son broke down the door, and that M.C. observed mother bleeding. She attributed the incident to depression, which she blamed on a vitamin deficiency. She testified that she was hospitalized again, shortly thereafter, and that M.C. stayed with father during this time. She acknowledged that M.C., who had been seeing a therapist for the last five years, subsequently showed more signs of depression, missed additional days of school, failed to attend "homework club," slept poorly, complained of stomach problems, and suffered panic attacks and other anxieties. She conceded that M.C. was struggling, and that her home situation with three other children, including her younger son who is autistic, was a little crazy.

Father testified that he is a self-employed carpenter with a flexible work schedule. He was concerned that M.C.'s recent struggles were related, in part, to stresses relating to mother and mother's household. He was also concerned about M.C.'s physical safety, stating that M.C.'s younger brother was often violent and out of control, that father had seen him strike M.C., and that M.C. had come to father's house with bruises that she attributed to being hit by the younger brother.

At the conclusion of the hearing, the trial court found that father had shown a real, substantial and unanticipated change of circumstances based on evidence of mother's struggles with depression and managing the household, and evidence of M.C.'s declining mental health. The court scheduled a second hearing day to afford the parties an opportunity to present additional evidence.

At the hearing in February 2015, father again testified and also called two additional witnesses—his partner, and the child's mentor with the Girls and Boys Club.[2] Father's partner testified that she gets along well with M.C. during visits, and viewed herself as playing a motherly role in the child's life. She noted that M.C. liked to stay up late, but would go to bed when told to do so, and that she shared a bedroom with father's other daughter during visits. Father's partner expressed concern about M.C.'s general well-being, appearance, and hygiene when she came for visits. M.C.'s mentor also testified that she had concerns about changes in M.C.'s behavior, observing that she often appeared to be sad and overwhelmed by school. She also expressed concern about the home situation with M.C.'s younger brother, noting that it appeared to trouble M.C. Father reiterated his concerns about mother's periodic depressions, M.C.'s chaotic home life, and M.C.'s struggles with her mood, homework, and hygiene.

Mother called her older son as a witness. He testified that his relationship with M.C. was generally good, that M.C.'s relationship with her younger brother was antagonistic but nothing

---

[2] Father had arranged for the child's therapist to testify by telephone, but the therapist did not answer when called.

2

worse, and that M.C. was loving and protective of her younger sister. He acknowledged that the household was more chaotic than most. Mother testified about her sporadic relationship with the father of M.C.'s younger sister, acknowledging that she had recently asked him to move out because of alcohol problems. She acknowledged that M.C. remained troubled, and that her pediatrician believed that she was depressed. Mother argued that M.C. was close to her siblings and friends in the community, and that it would not be in M.C.'s best interests to uproot her to another household in a different community.

The court issued a written ruling in May 2015. After reviewing the record evidence summarized above, the court reaffirmed its earlier finding that it was "more likely than not that [M.C.'s] significant decline in mental health is strongly affected by her household environment, and that such marked decline comprises a real, substantial and unanticipated change in circumstances." Based on the evidence of "household disorganization, numerous calls to the police, and . . . . chaos," the court concluded that mother lacked the ability "to meet [M.C.'s] present developmental needs." While recognizing mother's historic role as M.C.'s primary care provider, and conceding that it was a close case, the court concluded that a change of custody would alleviate M.C.'s " clear maladjustment" to her current housing situation, and that father was "better positioned to provide a safe environment" for M.C. and the opportunity to recover her equilibrium. The court thus awarded father sole physical and legal parental rights and responsibilities, and provided for visitation with mother every other weekend. The court also directed father to ensure the completion of any educational or psychological evaluations M.C. was currently undergoing. This pro se appeal by mother followed.

Our review of a trial court's decision to modify parental rights and responsibilities is generally deferential. We assess the trial court's findings "in the light most favorable to the prevailing party below, disregarding the effect of any modifying evidence, and we will not set aside the findings unless they are clearly erroneous." Spaulding v. Butler, 172 Vt. 467, 475 (2001) (quotation omitted). Accordingly, we will uphold the court's factual findings "if supported by credible evidence, and the court's conclusions will stand if the factual findings support them." Id. (quotation omitted). In making the necessary threshold finding of changed circumstances, the court's "determination is a matter of discretion," which we will not disturb unless made "for reasons untenable." Meyer v. Meyer, 173 Vt. 195, 197 (2001). Once the court has found the requisite change of circumstances, it must determine what is in the best interests of the child, a decision similarly committed to the trial court's sound discretion. See Spaulding, 172 Vt. at 475 ("Trial courts have broad discretion in determining the best interests of the child.").

Closely parsed, mother's brief raises the following claims. First, she contends the trial court abused its discretion by admitting a number of police reports under the "public records" exception to the hearsay rule. V.R.E. 803(8). She claims that they contain hearsay within hearsay, and otherwise "indicate a lack of trustworthiness" under V.R.E. 803(8)(B)(iv). Although mother initially questioned the validity of the records, she did not object to their admission on hearsay grounds. She has therefore waived this argument on appeal. See Jordan v. Nissan N. Am., Inc., 2004 VT 27, ¶ 10 (holding party was precluded on appeal from objecting to admission of evidence on hearsay grounds where below party objected on different ground of

statutory compliance); State v. Faham, 2011 VT 55, ¶ 24 (mem) (holding defendant was precluded from raising on appeal a different theory regarding the admissibility of evidence than what was presented to the trial court). See also V.R.E. 103(a)(1) (error may not be predicated upon admission of evidence unless "a timely objection or motion to strike appears of record"). Furthermore, we note that the trial court relied on the records largely to show the substantial number of police calls relating to the family as indicative of "the chaos in the household" rather than for the truth of their specific contents. See V.R.E. 801(c) (defining hearsay as a statement "offered in evidence to prove the truth of the matter asserted"). Accordingly, we find no basis to disturb the judgment based on the alleged evidentiary error.

Mother next contends the trial court made a number of erroneous factual findings. She asserts that the court erred in characterizing the procedural history of the matter as including "multiple contested hearings." Mother does not assert, however, nor does the record show, that the alleged mischaracterization had any prejudicial effect. See Rogers v. Parrish, 2007 VT 35, ¶ 21, 181 Vt. 485 ("Erroneous or unsupported findings do not require reversal . . . unless they are shown to have been prejudicial.").

Mother also takes issue with the court's finding: "[Father's partner] has a good relationship with [M.C.] and has been talking to her, along with [partner's] daughter about 'girl' things, including changes brought on by puberty." Mother notes that the child is not father's partner's daughter, but rather father's daughter. Again, however, the court's finding was focused on father's partner's positive relationship with both girls; the factual error was neither substantial nor prejudicial. Under a separate heading, mother also contends the trial court failed to substantiate its finding concerning the "lack of household organization." Mother and her older son, however, characterized the household circumstances as crazy or chaotic, and the number of police visits—as the court noted—also supported the finding.

Mother further disputes the court's decision to "credit [father's partner's] testimony that [M.C.] at times expresses anxiety regarding her safety around" her younger brother. The trial court is in the best position to observe the witnesses and weigh their credibility, and we will generally not disturb its findings in this regard unless clearly erroneous. Begins v. Begins, 168 Vt. 298, 301 (1998). Several witnesses, including father's partner, father, and M.C.'s mentor, all testified to either observing M.C.'s younger brother strike her or to hearing M.C. express concerns about her younger brother. We thus find no basis to disturb the court's finding.

Mother additionally questions the court's finding that mother was "grateful" for father's partner's assistance in talking with M.C. about certain matters related to puberty, and that mother testified that "doing these types of things was not part of her mothering technique." The court's findings were a reasonably fair characterization of mother's acknowledged testimony that father's partner was "great" with M.C. and "has a lot of cool things to teach M.C. about makeup . . . because I'm not that kind of mom . . . ." We find no error.

Mother next contends the trial court improperly denied her request for a continuance. The record discloses that, at the start of the first day of the hearing in mid-January 2015, mother objected to the hearing, because she was not prepared to address the additional concerns set forth

in father's amended modification motion, filed in late December 2014. The court indicated that it would afford the parties another full hearing day to submit additional evidence, set the matter for a continued hearing five weeks later, and proceed with the scheduled hearing. Thus, the record does not show, nor does mother assert, that she was denied the opportunity to submit evidence, or that she was prejudiced in any way by the court's ruling.

Mother next contends the court failed to "show that it thoroughly reviewed the record in determining the best interest of the child" by showing a disregard for the age and developmental stage of M.C., "overlook[ing]" father's testimony that he is not comfortable discussing certain matters relating to puberty with M.C., failing to accord sufficient weight to father's opposition to M.C. obtaining medical evaluations and help, and failing to consider the impact of a change of custody on M.C.'s relationships with her siblings, friends, and community. The court addressed many of these matters directly or indirectly. The court noted father's concern that M.C. not be "medicated" until a full evaluation was completed and environmental factors were considered, and expressly directed father to ensure that all medical evaluations be completed. The court also recognized mother's history as M.C.'s primary care provider, and the testimony concerning M.C.'s close relationship with her younger sister. While finding that it was a close case, the court ultimately concluded that other concerns outweighed these factors, including most particularly mother's ability to address M.C.'s declining mental health. We find no basis to conclude that the court, in weighing these competing considerations, abused or failed to exercise its discretion.

Mother further asserts that the court erred in dismissing the guardian ad litem for M.C. at the outset of the first of the two hearing days.[3] The trial court's decision whether to appoint a guardian ad litem in a custody case is a discretionary one. See 15 V.S.A. § 669 ("In all cases involving parental rights and responsibilities the court may appoint a guardian ad litem to represent the best interests of the child."). The purpose of a guardian ad litem is to help the child in understanding the process and to provide the parties and their attorneys with information that can assist the parties in reaching an outcome that is in the best interest of the child. Vermont Family Proceedings Rule 7(b). In the context of an evidentiary hearing such as this one, the guardian ad litem may not speak on the record unless an attorney for the child has been appointed and either the parties agree, or the court requests, that the guardian ad litem speak. V.R.F.P. 7(f)(2). In this case, the court had not appointed an attorney for the child. Even if the guardian ad litem had been present through the hearing, he would not have been authorized to speak on the record. Under these circumstances, it is not clear from mother's brief what role she believes the guardian ad litem would have played had the court not dismissed him, or how his absence prejudiced her. We conclude that that the trial court did not abuse its discretion in dismissing the guardian ad litem.

Finally, mother contends that the evidence failed to support the court's finding that a custodial change would benefit M.C., asserting that the court assumed M.C.'s problems were "situational in nature" rather than—as "medical research" suggests—related to her "bio-

---

[3] We have been unable to locate the trial court's exchange with the guardian ad litem in the record. For the purposes of our analysis, we accept mother's description of the record.

psychology and . . . pubescent hormonal changes." Mother offered no medical evidence at the hearing, however, and her references to medical articles are outside the record and may not be considered. State v. Brown, 165 Vt. 79, 82 (1996); V.R.A.P. 10(a). The court's finding that a custodial change would benefit M.C. was reasonably supported by the circumstantial evidence suggesting a correlation between M.C.'s decline in mental health, mother's depression and the circumstances surrounding mother's hospitalizations, and mother's chaotic household. Accordingly, we find no error, and no basis to disturb the judgment.

Affirmed.

BY THE COURT:

_____
John A. Dooley, Associate Justice,

_____
Beth Robinson, Associate Justice

_____
Harold E. Eaton, Jr., Associate Justice