2013 VT 96



Dernier v. Mortgage Network,
Inc., Mortgage Electronic Registration Systems, Inc., and U.S. Bank National
Association (2012-226)

 

2013 VT 96

 

[Filed 18-Oct-2013]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to
notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by
mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont
05609-0801, of any errors in order that corrections may be made before this
opinion goes to press.

 

 


 2013 VT 96
 
  


 No. 2012-226
 
  


 Peter Dernier and Nicole Dernier
 
 
 Supreme Court
 
 
  
 
 
  
 
 
  
 
 
 On Appeal from
 
 
      v.
 
 
 Superior Court, Windsor Unit,
 
 
  
 
 
 Civil Division
 
 
  
 
 
  
 
 
 Mortgage Network, Inc., Mortgage
 Electronic Registration Systems, Inc. and U.S. Bank National Association
 
 
 November Term, 2012
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Theresa
 S. DiMauro, J.
 
 
  
 
 Kimberly B. Cheney of Cheney Saudek & Grayck PC,
Montpelier, for Plaintiffs-Appellants.

 

Andre D. Bouffard of Downs Rachlin Martin PLLC, Burlington,
for Defendants-Appellees.

 

 

PRESENT:  Reiber, C.J., Dooley, Skoglund, Burgess and
Robinson, JJ.

 

 

¶ 1.            
DOOLEY, J.   Plaintiffs Peter and Nicole Dernier appeal
the dismissal for failure to state a claim, of their action for (1) a
declaratory judgment that defendant U.S. Bank National Association cannot
enforce the mortgage and promissory note for the debt associated with
plaintiffs’ purchase of their house based on irregularities and fraud in the
transfer of both instruments, (2) a declaration that U.S. Bank has violated
Vermont’s Consumer Fraud Act (CFA) by asserting its right to enforce the mortgage
and note, and (3) attorney’s fees and costs under the CFA.  They also
appeal the trial court’s failure to enter a default judgment against defendant
Mortgage Electronic Registration Systems, Inc. (MERS).  We affirm in part
and reverse in part. 

¶ 2.            
The following facts set out the basic events that led to the suit and
the procedural posture of the case.  The allegations as to the alleged
irregularities and fraud related to the note and mortgage, and the specific
claims in plaintiffs’ complaint, will be explained in greater detail
thereafter.   

¶ 3.            
Plaintiffs purchased a house in Weston, Vermont in 2005.  Kittredge
Mortgage Corporation, a Vermont corporation, loaned plaintiffs $242,250 for the
purchase, and Peter Dernier executed a promissory note in favor of Kittredge in
that amount on October 7, 2005.  Plaintiffs also executed a mortgage in
favor of Kittredge on the same date.  Plaintiffs allege no irregularities
with the purchase of the house or the execution of the note or mortgage.

¶ 4.            
After that smooth beginning, things began to get murky.  The note
and the mortgage were immediately transferred, and although their paths were
slightly different, by the time of this suit both had entered the secondary
mortgage market and had landed in a trust administered by U.S. Bank.  

¶ 5.            
Plaintiffs fell behind on their mortgage, and in March 2011 brought suit
against two parties: Mortgage Network, Inc. (MNI), which is in the chain of
title for both the note and the mortgage, and MERS, which is in the chain of
title for the mortgage as a “nominee” for MNI.  Plaintiffs sought a
declaratory judgment that the mortgage was void, asserting that (1) MERS, as a
nominee, never had any beneficial interest in the mortgage, (2) MNI had
assigned its interest in both instruments to others without notifying
plaintiffs, and (3) no party with the right to foreclose the mortgage had
recorded its interest.  MNI responded by letter on April 25, 2011 that
plaintiffs had named MNI as a party in error, because MNI did “not own the
right to the mortgage in question.”  MERS did not respond.  Around
this time, plaintiffs received a letter in which U.S. Bank, through its
attorney, represented that it possessed the original promissory note and mortgage
and that it had the right to institute foreclosure proceedings on the property.

¶ 6.            
In June, 2011, plaintiffs moved for a default judgment against MNI and
MERS.  A few days later, plaintiffs moved to amend their complaint to join
U.S. Bank as a defendant, alleging for the first time—in general terms—that the
assignment to U.S. Bank was invalid and U.S. Bank’s assertion of any interest
was an unfair and deceptive practice in violation of the CFA.  The
complaint as to U.S. Bank called for a declaratory judgment that U.S. Bank had
no right to foreclose the mortgage or enforce the note, that U.S. Bank had
violated the CFA, and that plaintiffs were entitled to attorney’s fees.

¶ 7.            
The trial court granted plaintiffs’ motion to join U.S. Bank as a party,
but denied the motion for default judgment.  In denying plaintiffs’
motion, the trial court noted that, because the case was a declaratory judgment
action “in which relief granted as against one defendant may have significant
effects on the rights of others,” default judgment was not appropriate “until
all parties have been added, served, and have had time to file answers.” 
It added, however, that plaintiffs were free to renew their motion for default
judgment after those conditions were satisfied.

¶ 8.            
U.S. Bank moved to dismiss the case and plaintiffs responded by filing
an amended complaint, where they explained for the first time their allegations
of fraud and noncompliance with the terms of the pooling and servicing
agreement (PSA) governing the pool into which the mortgage had been
assigned.  U.S. Bank again moved to dismiss, noting the heightened
pleading requirement for allegations of fraud under V.R.C.P. 9(b).
 Plaintiffs moved to file a second amended complaint, in which the
allegations of fraud were laid out in detail and accompanied by exhibits.
 U.S. Bank opposed the filing of the second amended complaint and again
moved to dismiss.  The trial court denied plaintiffs’ motion to amend and
dismissed plaintiffs’ case for failure to state a claim.  See Prive v.
Vt. Asbestos Grp., 2010 VT 2, ¶¶ 12-13, 187 Vt. 280, 992 A.2d 1035
(explaining that when a plaintiff files an amended complaint in response to a
motion to dismiss, the correct test is whether the amended complaint would
survive a motion to dismiss).  Plaintiffs appealed.

¶ 9.            
While we are technically reviewing the denial of a motion to amend a
complaint, the trial court’s decision was based on the content of the proposed
second amendment to the complaint.  Thus, we treat the case as if
plaintiffs’ complaint were amended as they proposed and the superior court
dismissed it for failure to state a claim.  

¶ 10.        
We also note that, although plaintiffs continue to name MNI and MERS as
defendants along with U.S. Bank, plaintiffs’ amended complaint addresses only
claims against U.S. Bank and prays for relief only against U.S. Bank. 
Accordingly, we treat U.S. Bank as the sole defendant here unless we state
otherwise.

¶ 11.        
In their complaint, plaintiffs allege irregularities and fraud related
to the transfer both of the note and the mortgage.  For each item, the
note and the mortgage, we will first describe the state of the documentation as
found in the exhibits attached to the complaint and then summarize the
allegations made by plaintiffs.  As this case comes to us on a motion to
dismiss, we must take the allegations in plaintiffs’ complaint as true, a point
we stress below—but examining the documents allows us to understand better plaintiffs’
claims.

¶ 12.        
We begin with the note, and with what appears on the note itself. 
In what was presumably the first step, although there are no dates on the
assignments, Kittredge assigned the note to MNI, a Massachusetts corporation,
through a stamp that was signed by Yvonne Pickard.  The next transfer was
effected by a stamp that reads: “Pay to the order of ** Without
Recourse.”  Under that statement is the name “Mortgage Network, Inc.,”
followed by “By: Chad M. Goodwin, Pipeline Manager.”  Above this stamp is
typed: “** US Bank National Association, as Trustee for CSMC Mortgage-Backed
Pass-Through Certificates, Series 2006-3.”  What seems to be a signature
is placed over Chad Goodwin’s name.  

¶ 13.        
The CSMC trust is governed by a PSA, which plaintiffs submitted as an
exhibit with their second amended complaint.  According to the PSA,
defendant is the “Trustee,” and Wells Fargo Bank N.A. is the “Servicer.” 
While that accords with the assignment on the mortgage, other elements of the
PSA are confusing as they relate to plaintiffs’ note.  First, according to
the PSA, the trust is composed of assets for which DLJ Mortgage Capital, Inc.
is the “seller” and Credit Suisse First Boston Mortgage Securities Corp. is the
“depositor.”  As there is no indication that plaintiffs’ note was owned by
Credit Suisse or DLJ Mortgage Capital, this is certainly perplexing, for the
PSA suggests that it is composed entirely of instruments acquired by DLJ
Mortgage Capital and transferred to Credit Suisse, and states that an “original
Mortgage Note bearing all intervening endorsements” must be delivered to
the custodian of the trust.  (Emphasis added.)  Another strange
element of the PSA is that the trust has a “closing date” of March 30, 2006,
and gives 90 days from that date for the trust to obtain any missing papers,
but the note has no indication of when the transfer was made.

¶ 14.        
Seizing on these facts, plaintiffs in their complaint assert various conflicting
fact patterns surrounding the transfer of the note, in an effort to show that
defendant does not have the right to enforce it.  First, they assert that
DLJ Mortgage Capital acquired the note from MNI and transferred it to Credit
Suisse—although there is no evidence of this on the note, this assertion is
presumably based on the proposition that because the trust is composed of
instruments from DLJ Mortgage Capital and Credit Suisse it must have passed
through those entities to become part of the trust.  Plaintiffs draw from
this the conclusion that the purported transfer to defendant from MNI was
invalid, as defendant had given up the note to DLJ Mortgage Capital. 
Second, plaintiffs assert that defendant acquired the note after the closing
date of March 30, 2006, which they claim makes the transfer invalid and
prevents the trust from owning the note.  There is no stamp on the date of
the transfer to defendant, but plaintiffs seem to presume that it occurred
after June 30, 2006, while acknowledging that the date has not been precisely
determined.  Finally, plaintiffs assert that the initial stamp from Chad
Goodwin was blank, but that defendant, “by its employees or agents, caused the
purported signature of Goodwin to be affixed on the Note.”  They also
state, in a different variation on that allegation, that defendant “knew the
endorsement was fraudulent.”  The justification for these last two
statements is that plaintiffs have somehow located Chad Goodwin’s signature on
a mortgage in Maine, which they submitted as an exhibit, noting that that
signature looks very different from the signature on their note.  

¶ 15.        
Moving on to the mortgage, the picture is no clearer.  On October
7, 2005—the very day the mortgage was executed by Peter Dernier to
Kittredge—Kittredge assigned it to MERS, a Delaware corporation, as nominee for
MNI.  Plaintiffs allege no irregularity in this assignment, and it was
recorded in the Weston land records on October 12, 2005.  The next
transfer for which there is documentation was on March 18, 2011, from MERS to
defendant, again as trustee for Credit Suisse First Boston Mortgage Securities
Corp., Mortgage Backed Pass-Through Certificates, Series 2006-3.  

¶ 16.        
There are three things pertinent to plaintiffs’ complaint to flag about
this transfer.  First, the text of the assignment says that MERS is acting
as a nominee for Kittredge Mortgage Corporation.[1]  Given the earlier transfer from
Kittredge to MERS as nominee for MNI, this language appears to be clearly
wrong.  Second, the assignment is signed for MERS by “Michael Snively,
Assistant Secretary.”  As evidenced by another document attached to the
complaint, Michael Snively is an employee of Wells Fargo—the servicer of the
trust—not of MERS.[2] 
Finally, similar to the problem of the note discussed above, the date of the
assignment to the trust was after the closing date.  

¶ 17.        
Plaintiffs in their complaint assert that the assignment to defendant
was invalid for all of these reasons, adding an allegation that the signature
of the notary public avowing to the signature by Michael Snively was
“forged.”  

¶ 18.        
After putting forward these allegations, plaintiffs explain in their
complaint that they seek three forms of relief.  First, they request a
declaratory judgment that defendant has no right to enforce either the note or
the mortgage, based on the violations of the PSA and the alleged fraud. 
Second, they request a declaration that defendant has violated the CFA by
stating that it believes it has the right to enforce the mortgage and
note.  Finally, presumably based on the CFA claim, they request payment of
their attorney’s fees and costs.  

¶ 19.        
Defendant opposed the motion to amend, essentially arguing that it was
futile and would not survive a motion to dismiss.  Its primary arguments
were that plaintiffs lacked standing to make their claims.  As to the
alleged violations of the PSA, defendant argued that plaintiffs were neither
parties to nor beneficiaries of the PSA, so they have no standing to enforce
it.  As to the alleged fraud in the assignments, defendant argued that the
suit is premature and the issues will become ripe only if and when defendant
files a foreclosure action.  As we discuss below, defendant attached to
its motion documents that show that plaintiffs and the loan servicer, Wells
Fargo Bank, twice entered into loan modification agreements to extend the
payment terms, but that the loan is now in default.

¶ 20.        
The superior court decided that the motion to amend was futile because
it could not survive a motion to dismiss, essentially accepting defendant’s
arguments.  With respect to the alleged violations of the PSA, it held
that plaintiffs had no standing to enforce the PSA terms and that violations of
the PSA were irrelevant to the enforceability of the note and mortgage against
plaintiffs.  With respect to the alleged defects in defendant’s title to
the mortgage, it held that the suit was premature because defendant did not
need to prove its status until it sought to foreclose.  The court noted
that the defects were not, in any case, a ground for discharge of the mortgage,
but instead only a defense to the foreclosure action, which defendant could
cure.

¶ 21.        
The superior court also addressed plaintiffs’ claim that defendant had
violated the CFA by claiming that it could enforce the note and mortgage
against plaintiffs.  The court held that plaintiffs failed to show how the
representation “could have been material or deceptive as it pertained to
them.”  It also held that because plaintiffs cannot enforce the PSA, they
could not make a CFA claim based on a breach of the PSA, and noted the federal
cases that have so held.

¶ 22.        
 Based on these allegations and stated causes of action, the trial
court dismissed plaintiffs’ complaint.  On appeal, plaintiffs argue that
the trial court erred in ruling that (1) plaintiffs, as mortgagors, have
no standing to seek to invalidate an instrument because it violates the terms
of a PSA; (2) plaintiffs’ declaratory judgment action based on fraud was
premature because defendant had not yet sought to foreclose; and (3) plaintiffs
stated no claim under the CFA.  They also appeal the trial court’s failure
to enter a default judgment against defendant MERS.  

¶ 23.        
We review a motion to dismiss using the same standard as the trial
court.  “A motion for failure to state a claim may not be granted unless
it is beyond doubt that there exist no facts or circumstances that would
entitle the plaintiff to relief.”  Kaplan v. Morgan Stanley & Co.,
2009 VT 78, ¶ 7, 186 Vt. 605, 987 A.2d 258 (mem.) (quotations
omitted).  “We assume that all factual allegations pleaded in the
complaint are true, accept as true all reasonable inferences that may be
derived from plaintiff's pleadings, and assume that all contravening assertions
in defendant's pleadings are false.”  Mahoney v. Tara, LLC, 2011 VT
3, ¶ 7, 189 Vt. 557, 15 A.3d 122 (mem.) (quotation, brackets, and ellipses
omitted).

¶ 24.        
We stress the very limited standard of review under the procedural
posture in this case.  As we discuss below, the standing questions on
which the trial court relied are based, in part, on the substantive rights of
the parties, which are generally unbriefed and unexplored and present complex
questions of first impression.  Except to identify many of the issues, we
largely leave their resolution to future proceedings, if any.

¶ 25.        
There is an additional point about our review in this case. 
Although the case was decided essentially on a motion to dismiss, numerous
documents and representations were presented by the parties.  Generally,
when additional material is presented in support of, or in opposition to, a
motion to dismiss, the trial court is required to treat the motion to dismiss
as a motion for summary judgment and notify the parties of the change in
procedure.  See V.R.C.P. 12(c); Nash v. Coxon, 152 Vt. 313, 314-15,
565 A.2d 1360, 1361 (1989).  This did not happen here.[3]  Essentially the parties added facts
that they thought favored their position.  Apart from the validity of
those actions, the inevitable result is that we have a very incomplete picture
of the circumstances of the parties, and this affects our ability to resolve
the issues before us.  As an overview of our decision, at least some of
the issues in this case should have been resolved on a more complete record
that could be presented only by summary judgment.

¶ 26.        
We begin with plaintiffs’ request for declaratory judgment that
defendant has no right to enforce the mortgage or the note.  This question
must be broken down into two components, for plaintiffs allege that the
mortgage and note are unenforceable based on (1) violations of the PSA;
and (2) fraud and irregularities in the chain of title.  We first address
the question of the violations of the PSA.

¶ 27.        
Defendant argues that plaintiffs, because they are neither parties to
nor third-party beneficiaries of the PSA, lack standing to challenge
assignments in contravention of that agreement.  This has been the
conclusion of the vast majority of courts that have considered this question.[4]  See, e.g., In re Correia,
452 B.R. 319, 324–25 (B.A.P. 1st Cir. 2011) (finding that an individual who is
not a party or a third party beneficiary of the PSA lacks standing to object to
breaches of the PSA’s terms); Butler v. Deutsche Bank Trust Co., No.
12-10337-DPW, 2012 WL 3518560, at *7 (D. Mass. Aug. 14, 2012) (“[A] mortgagor
does not have standing to challenge a foreclosure on the basis of the
non-compliance of an assignment with the provisions of the PSA governing a
foreclosing trust.”); Abubo v. Bank of N.Y. Mellon, No. 11–00312
JMS–BMK, 2011 WL 6011787, at *9 (D. Haw. Nov. 30, 2011) (“[E]ven assuming terms
of the PSA were not followed, Plaintiffs may not set aside the assignment of
the Mortgage . . . on that basis.”); Anderson v. Countrywide Home
Loans, No. 10-2685 (MJD/JJG), 2011 WL 1627945, at *4 (D. Minn. Apr. 8,
2011) (“Plaintiffs do not have standing to challenge the validity of the
assignment to the Trust because they are not parties to the PSA.”). 

¶ 28.        
This is a question of first impression for this Court.  While we
ultimately agree with the conclusion of those courts cited above, a bit more
elucidation is in order.  We begin with the longstanding contract-law
principle, applied by this Court in past decisions, that a plaintiff who is not
a party to a contract does not have standing to challenge a breach of that
contract.  See Bischoff v. Bletz, 2008 VT 16, ¶ 16, 183 Vt.
235, 949 A.2d 420 (citing Palmer v. Bahm, 2006 MT 29, ¶ 13, 128
P.3d 1031, for the proposition that individuals who “are strangers to [a]
contract . . . have no right to challenge the validity” of
that contract); Bryant v.
Strong, 141 Vt. 244, 245 n.1, 448 A.2d 142, 143 n.1 (1982) (noting that individual who
was not a party to contract has no standing to challenge contract’s validity);
see also 13 S. Williston & R. Lord, A Treatise on the Law of Contracts §
37:1, at 5 (4th ed. 2000) (“[C]ourts recite talismanically . . . that
‘strangers to a contract’ have no rights under the contract.”).

¶ 29.        
While we have never so held, courts in other states have qualified this
strong proposition in the case of assignment of debts, explaining that a debtor
may challenge the assignment of his or her debt if it is void or entirely
ineffective—even if that means allowing a “stranger to a contract” to assert
reasons related to the breach of that contract.  They have been careful to
emphasize, however, that this exception does not allow a debtor to challenge an
assignment of the debt that is merely voidable.  See, e.g., Puente
v. CitiMortgage, Inc., No. 3:11-CV-2509-N, 2012 WL 4335997, at *6 (N.D.
Tex. Aug. 29, 2012) (“The law is settled that the obligors of a claim may
defend the suit brought thereon on any ground which renders the assignment
void, but may not defend on any ground which renders the assignment voidable
only.” (internal quotation omitted));  Miller v. Homecomings Fin., LLC,
881 F. Supp. 2d 825, 831 (S.D. Tex. 2012) (“Texas has long followed the common
law rule which permits a debtor to assert against an assignee any ground that
renders the assignment void or invalid.” (emphasis added) (citing Tri–Cities
Constr., Inc. v. American Nat'l Ins. Co., 523 S.W.2d 426, 430 (Tex. Civ.
App 1975)); Bergquist v. Deutsche Bank Nat. Trust Co., No.
3:11-CV-01303-AC, 2012 WL 3288859, at *5 (D. Or. Mar. 14, 2012) (identifying a
“long-standing principle of contract law, that a debtor may assert as a defense
any matter which renders the assignment absolutely invalid or ineffective,
or void” (emphasis added) (quotation omitted)); Wolf v. Fed. Nat’l
Mortg. Ass’n, 830 F. Supp. 2d 153, 161 (W.D. Va. 2011) (stating that
plaintiff who is not a party to the assignment or an intended beneficiary can
challenge a void but not a voidable assignment).  We agree with this
reasoning.  We conclude therefore that plaintiffs can assert their claims
based on violations of the PSA only if those violations rendered the assignment
to defendant absolutely invalid for breach of the PSA provisions.

¶ 30.        
The obvious next step, then, is to determine whether the alleged
violations of the PSA would serve to render the assignment of plaintiffs’
mortgage and note void or merely voidable.  We evaluate this question
under New York law, which governs the trust in this case.

¶ 31.        
Plaintiffs argue that because of the alleged violations of the PSA, the
assignment of their mortgage to defendant as trustee for the trust is
void.  They base this argument on their understanding of New York trust
law, particularly New York Estates, Powers and Trusts Law (EPTL), which states:

If
the trust is expressed in the instrument creating the estate of the trustee,
every sale, conveyance or other act of the trustee in contravention of the
trust, except as authorized by this article and by any other provision of law,
is void.

 

N.Y. Est. Powers & Trusts Law § 7-2.4.

 

¶ 32.        
As an initial observation, the assignments to the trust of the note and
the mortgage were signed by MNI and MERS, respectively, and therefore would not
seem to be in a strict sense actions of the “trustee,” defendant.  See Deutsche
Bank Nat’l Trust Co. v. Stafiej, No. 10 C 50317, 2013 WL 1103903, at *4
(N.D. Ill. Mar. 15, 2013) (noting that because “[t]he assignment, which was not
accompanied by proof that it followed the correct chain of assignment to get to
the trust, was not filled out by the trustee; it was signed by an agent
of . . . the original
lender, . . . this court would find their attempt to void
the assignment unpersuasive”).  However, because plaintiffs allege in
their complaint that defendant caused these assignments to be made, and because
in any case defendant has clearly accepted the assignments, we will proceed
under the assumption that defendant as trustee did in fact act in violation of
the PSA.

¶ 33.        
Unfortunately for plaintiffs, New York courts—while somewhat conflicted
on the matter—generally find, despite the strong statutory language of EPTL
§ 7-2.4, that actions of a trustee in contravention of the trust are
voidable rather than void.  This issue was analyzed at great length by the
Illinois Appellate Court in Bank of America National Ass’n v. Bassman FBT,
LLC, 2012 IL App (2d) 110729, 981 N.E.2d 1.  As explained by that
court, under New York law, unauthorized actions by a trustee are ratifiable by
the beneficiary of the trust and ratifiable actions are voidable rather than
void.  2012 IL App (2d) 110729, ¶¶ 19-21; see also Mooney v.
Madden, 597 N.Y.S.2d 775, 776 (App. Div. 1993) (“A trustee may bind the
trust to an otherwise invalid act or agreement which is outside the scope of
the trustee’s power when the beneficiary or beneficiaries consent or ratify the
trustee’s ultra vires act or agreement.”); Aronoff v. Albanese, 446
N.Y.S.2d 368, 370 (App. Div. 1982) (explaining that voidable acts may be
ratified, but void acts may not).  A recent New York case declined to
find, at summary judgment, that a borrower’s “debt was void under EPTL 7–2.4”
because “defendant's submissions did not demonstrate as a matter of law” that
the borrower—the trustee of a trust, who had executed the promissory note for
the debt—“lacked actual or apparent authority to bind the Trust to the
note.”  Feldman v. Torres, 939 N.Y.S.2d 221, 224 (App. Term
2011).  This analysis makes clear, by reference to the doctrine of
apparent authority, that the trustee’s actions in contravention of the trust
were not absolutely invalid.  

¶ 34.        
Of course, neither the Illinois Appellate Court nor this Court has the
authority to finally interpret New York law, and the use of the word “void” in
EPTL § 7–2.4 is troubling.  Nor, as Bassman points out, do all
New York cases seem to agree that the acts of a trustee in contravention of a
trust are voidable rather than void.  2012 IL App (2d) 110729, ¶ 23;
see, e.g., Knight v. Knight, 589 N.Y.S.2d 195, 197 (App. Div. 1992)
(suggesting that a “void assignment” cannot be ratified).  However, a
sufficient number of cases decline to find actions of a trustee in
contravention of the trust void that we agree with the Bassman court
that EPTL § 7–2.4 cannot be taken literally.  We interpret the
current state of New York law to be that a transfer into a trust that violates
the terms of a PSA is voidable rather than void.[5]  As that court explained, the
“tension between these cases and the apparently plain language of section
7-2.4” is “for New York courts to reconcile—not this one.”  Bassman,
2012 IL App (2d) 110729, ¶ 21.  While the New York courts have not
yet made that “reconciliation,” both state and federal courts in New York have
found that non-parties to a PSA lack standing to challenge violations of the
PSA by a trustee, suggesting that they agree with the Bassman
analysis.  See Cimmering v. Merrill Lynch Mortg. Investors, Inc.,
No. 8727/2011, 2012 WL 2332358, at *11 (N.Y. Sup. Ct. June 13, 2012)
(“Moreover, plaintiffs lack standing to allege a claim for breach of the PSA
because they are not parties to this contract, nor do they allege that they are
third-party beneficiaries to the agreement.”); Karamath v. U.S. Bank, N.A.,
No. 11 CV 1557(NGG)(RML) 2012 WL 4327613, at *7 (E.D.N.Y. Aug. 29, 2012)
(magistrate decision) ( “[P]laintiff is not a party to the PSA or to the
Assignment of Mortgage, and is not a third-party beneficiary of either, and
therefore has no standing to challenge the validity of that agreement or the
assignment.”), report and recommendation adopted by 2012 WL 4327502
(E.D.N.Y. Sept. 20, 2012).  We therefore hold that plaintiffs do not have
standing to challenge the assignments of the note and mortgage based on the
perceived violations of the PSA in its assignment to the trust, because any
such violations would render the assignments voidable rather than void.

¶ 35.        
We stress one result of our holding because it informs our analysis of
the next issue (whether plaintiffs’ allegations of fraud and irregularities in
the assignment of the note and mortgage to defendant survive the motion to
dismiss).  In their prayer for relief, plaintiffs sought a declaratory
judgment that defendant “does not now have, and cannot now acquire,
rights to enforce the note.”  (Emphasis added.)  Plaintiffs’ claim
that defendant cannot acquire a right to enforce the note in the future was
based on provisions of the PSA and the timing of defendant’s receipt of the
note.  By holding that plaintiffs cannot enforce the PSA, we have taken
away this potential remedy against defendant.

¶ 36.        
We next turn to the second basis of plaintiffs’ claim for declaratory judgment
that defendant may not enforce the mortgage or the note: the presence of fraud
and irregularities in the transfer of title of both instruments.  The
trial court found that these “allegations are premature because the holder of a
note need not prove its status until such time as it seeks enforcement of the
instrument.”  (Citing Wells Fargo Bank Minn., N.A., v. Rouleau,
2012 VT 19, ¶ 13, 191 Vt. 302, 46 A.3d 905; U.S. Bank Nat’l Ass’n v.
Kimball, 2011 VT 81, ¶ 14, 190 Vt. 210, 27 A.3d 1087.)  

¶ 37.        
We conclude that the trial court viewed plaintiffs’ circumstances too
narrowly, at least in dismissing the case solely on the pleadings.  In
their amended complaint plaintiffs sought a declaratory judgment that defendant
“does not have . . . rights to enforce the note” and “does not now
have and never has had any right, title and interest” in the mortgage.
 The facts before the Court indicate that defendant’s lawyer represented,
in a letter to plaintiffs’ counsel dated April 12, 2011, that defendant had the
original note and an assignment of the mortgage.  The letter stated: “The
assignment will be recorded when the foreclosure action is started” and that
“we believe that US Bank has proper standing to file the foreclosure action and
enforce the terms of the Note and Mortgage.”  A year earlier, in March
2010, Wells Fargo sent plaintiffs a letter declaring the loan was in default
and the note terms would be accelerated unless plaintiffs brought the payments
current.  There is no other information of record about plaintiffs’
payment under the note, but we can infer from defendant’s lawyer’s statement
that defendant was preparing for foreclosure.  Plaintiffs allege that they
want to sell the property covered by the mortgage, but cannot convey title
“because they are unable to determine which person, if any, has the authority
to enforce the note.”[6] 


¶ 38.        
Vermont has adopted the case-or-controversy requirement of the federal
courts, and this requirement “incorporates the doctrines of
standing, mootness, ripeness, and political
question.”  Brigham v. State, 2005 VT 105, ¶ 9, 179 Vt. 525,
889 A.2d 715 (mem.).  In a declaratory judgment action,
“[t]he availability of declaratory relief turns on whether the plaintiff is
suffering the threat of actual injury to a protected legal interest.”  Town
of Cavendish v. Vt. Pub. Power Supply Auth., 141 Vt. 144, 147, 446 A.2d
792, 794 (1982).  The case-or-controversy requirement does not disappear
because of the case’s declaratory nature: “Unless an actual or justiciable
controversy is present, a declaratory judgment is merely an advisory opinion
which we lack the constitutional authority to render.”  Doria v. Univ.
of Vt., 156 Vt. 114, 117, 589 A.2d 317, 318 (1991).  Specifically for
our purposes, the issue in a declaratory judgment action “must not be
premature, in that it must be a necessary part of the final disposition of the
case to which it pertains.”  Wood v. Wood, 135 Vt. 119, 121, 370
A.2d 191, 192 (1977).  Thus, “an action for declaratory relief must be
based on an actual controversy; the claimed result or consequences must be so
set forth that the court can see that they are not based
upon fear or anticipation but are reasonably to be expected.”  Robtoy
v. City of St. Albans, 132 Vt. 503, 504, 321 A.2d 45, 46-47 (1974).[7]

¶ 39.        
Defendant argues that because no party has initiated foreclosure
proceedings against plaintiffs, their claim is premature—i.e. not ripe—because
plaintiffs have not yet suffered any harm from the alleged fraud and
irregularities in the chain of title, and indeed may never suffer any
harm.  Therefore, they argue that there is no live controversy, and any
decision on our part would be a purely advisory decision, which we are not
authorized to issue.  See State v. M.W., 2012 VT 66, ¶ 12, 192
Vt. 198, 57 A.3d 696 (finding “no ripe controversy” where “there is no injury
to be addressed” and therefore only “a purely hypothetical legal question”).

¶ 40.        
We acknowledge that other courts, mostly federal, have accepted this
argument.  The United States District Court for the District of Vermont
found in an unpublished opinion, Ciccotelli v. Washington Mutual, Inc.,
No. 5:10-cv-16 (D. Vt. Feb. 4, 2013), that a pre-foreclosure suit by the
mortgagor to challenge the note and mortgage was premature such that the
plaintiff lacked standing.  Relying upon Young v. Wachovia Mortgage Co.,
No. 11-CV-01963-CMA, 2011 WL 6934110 (D. Colo. Dec. 30, 2011), it concluded
that plaintiff sought an advisory opinion that it could not give.  Id.
at 5; see also Livonia Prop. Holding, L.L.C. v. 12840-12976 Farmington Road
Holdings, L.L.C., 717 F. Supp. 2d 724, 735-36 (E.D. Mich. 2010).

¶ 41.        
We find these decisions to be inconsistent with the purpose of the
Declaratory Judgment Act, 12 V.S.A. chapter 167.  This case has reached
the point of a clear controversy between the parties.  Plaintiffs are
obligated to make payments over time, and defendant’s agent has declared them
to be in default.  We can infer, for purposes of this motion to dismiss,
that the agent has accelerated the note requiring plaintiffs to pay the entire
amount to avoid an adverse judgment and probably foreclosure.  Its letter
indicates that it is assessing late charges because of plaintiffs’ failure of
timely payment.

¶ 42.        
This case is similar to the early declaratory judgment case of Gifford Memorial Hospital v. Town of Randolph, 119 Vt. 66, 118 A.2d
480 (1955), where the plaintiff hospital sought a declaratory judgment against
the town that it was exempt from property taxes.  The town argued that the
action was premature and that the plaintiff had an adequate remedy to recover
taxes paid under protest or to appeal the assessment.  We answered that
the purpose of a declaratory judgment action was to overcome these objections:

 
The act has not enlarged the jurisdiction of the court over the subject matter
or the parties.  It has, however, opened to prospective defendants and to
plaintiffs at an early stage of the controversy a right to petition for relief
not heretofore possessed. In that sense, it has decidedly extended the power of
courts to grant relief in cases otherwise within their jurisdiction to pass
upon . . . .  

 

. . .

 

 
Here the facts are set forth sufficiently so they show that an actual
controversy exists.  The listers have appraised the property and a tax has
been assessed against the plaintiff.  It can reasonably be expected that
the town through its proper officers will proceed to collect the tax if it is
not paid when due. In fact the plaintiff so alleges.  If the plaintiff had
to wait until proceedings are brought or threatened to collect the tax, it
would be subject to costs and penalties for not paying the tax when due.
 That would defeat the very purpose of the act.

 

Id. at 70-71, 118 A.2d at
483 (citations omitted).  As to the alternative remedies, we held that a
proceeding for a declaratory judgment is available even though other remedies are
also available, as long as the judgment will “terminate the uncertainty or
controversy giving rise to the proceedings.”  Id. at 71, 118 A.2d
at 484.

¶ 43.        
On the limited state of the record, this case is controlled by Gifford
Memorial Hospital.  Defendant, through its agent, has declared a
default, and “it can reasonably be expected” that it will bring some form of
action to collect the amount due on the note.  Meanwhile, defendant is
enforcing the note by demanding payment, declaring a default, accelerating the
payment terms and seeking late charges.  Plaintiffs allege that they have
defenses to defendant’s enforcement of the note such that they can avoid these
consequences.  Rather than waiting for defendant to bring an action, they choose
at an “early stage of the controversy” to petition for relief.[8]  As in Gifford Memorial Hospital,
the availability of other remedies—here defending against an action on the note
or a foreclosure action—does not prevent their bringing of a declaratory
judgment action.  See Wells Fargo Bank, N.A. v. Ballestas, 355
S.W.3d 187, 192 (Tex. Ct. App. 2011) (holding that mortgagor facing foreclosure
can bring a declaratory judgment action against entity alleging right to
foreclose by alleging that entity did not own promissory note); cf. Harper
v. Brown, Stagner, Richardson, Inc., 873 So. 2d 220, 225 (Ala. 2003) (using
similar standard and emphasizing that purpose of Alabama’s Declaratory Judgment
Act is to “enable parties between whom litigation is inevitable to have the
issues speedily determined,” holding that alleged debtor can seek declaratory
judgment against creditor that he does not owe debt). 

¶ 44.        
Defendant responds that this case is different because a declaratory judgment
here will not “terminate the uncertainty or controversy” since plaintiffs owe
the amounts specified in the note to some entity, whether or not it is
defendant.  As the superior court put it, plaintiffs are not entitled to a
“free home;” the best they could obtain is the “ ‘ephemeral victory’ of a
dismissal of the foreclosure complaint against them without prejudice.” 
As noted above, the limitation of remedy is the consequence of plaintiffs’ lack
of standing to enforce the PSA. 

¶ 45.        
Much of defendant’s argument is based on its assertion that it wasn’t
required to possess the note and mortgage until it brought a foreclosure action
and that defendant controls the timing of such an action.  In making this
argument, defendant relies upon, but overreads, our decisions in Kimball
and Rouleau.  In Kimball, the plaintiff bank brought a
foreclosure action and the defendant argued that the bank did not have standing
to bring the action because it did not hold the note and mortgage at the time
it filed the foreclosure action.  We agreed that the plaintiff had to
demonstrate that it had the right to enforce the note at the time the
foreclosure action was filed and affirmed the dismissal of the complaint for
failing to meet that burden.  Kimball, 2011 VT 81,
¶¶ 13-15.  We held, however, that the dismissal was without prejudice
so that the plaintiff could refile when it possessed the note and was able to
prove that element.  Id. ¶ 22-23.

¶ 46.        
In Rouleau, the plaintiff, assignee of a note and mortgage,
sought to enforce a personal guaranty of the note and mortgage.  We held
that the holder of the note can enforce the guaranty.  Rouleau,
2012 VT 19, ¶ 15.  In doing so, we held that Vermont law does note
require the holder of the note to establish a chain of title for the
note.  Id. ¶ 13.

¶ 47.        
Defendant argues that these cases mean that it has no obligation to hold
the note prior to bringing a foreclosure action, and it must control the timing
of bringing any such action.  It argues that plaintiffs’ preemptive strike
is an impermissible attempt to obtain a decision that it cannot foreclose
because it doesn’t hold the note at the time of plaintiffs’ action.  We do
not read Kimball or Rouleau as having any relevance to our
decision, apart from the holding in Kimball, discussed above, that a
mortgagee can cure a deficiency in its standing to bring a foreclosure
action.  As we point out above, a mortgage foreclosure action or suit on a
note represent a judicial collection method after certain procedural steps are
taken and attempts are made at non-judicial collection.  Assuming the
controversy has become ripe and the adverse consequences for the mortgagors are
reasonably to be expected, we see no right in the mortgagee to prevent a
preemptive action by plaintiffs and delay its formal judicial collection
action.  Neither Kimball nor Rouleau gives defendant
exclusive control over the timing of judicial intervention. 

¶ 48.        
While we reject the bulk of defendant’s argument on standing, we
recognize that some courts have found no standing on the rationale we employed
with respect to the PSA and have added that plaintiffs have no interest in whom
they are obligated to pay, only whether they pay and whether the payment is
properly credited against their legal obligation.  There is a difference,
however, between challenging compliance with the PSA and challenging the
assignments of the note and mortgage to defendant as fraudulent and
irregular.  As we held above, plaintiffs cannot rely on the terms of the PSA
to challenge defendant’s actions or status, whether raised offensively, as
here, or raised in defense to a suit on the note or a foreclosure action. 


¶ 49.        
What is labeled as a lack of standing is actually a decision that the
governing substantive law offers no relief.  If, however, a mortgagor
could obtain relief under a different procedural vehicle—for example, in a
defense to a suit to enforce the note or a foreclosure action—the rationale for
this theory of lack of standing would evaporate.  This is the holding of
the recent decision of the U.S. Court of Appeals in Culhane v. Aurora Loan
Services, 708 F.3d 282, 291 (1st Cir. 2013).  In Culhane, the
court explained that:

There
is no principled basis for employing standing doctrine as a sword to deprive
mortgagors of legal protection conferred upon them under state
law. . . .  We hold, therefore, that a mortgagor has
standing to challenge the assignment of a mortgage on her home to the extent
that such a challenge is necessary to contest a foreclosing entity’s status qua
mortgagee.

 

Id. at 291; see also U.S.
Bank Nat’l Ass’n v. Ibanez, 941 N.E.2d 40 (Mass. 2011) (creating the state
law protection relied upon by Culhane).

¶ 50.        
We must look to Vermont law to determine whether plaintiffs have a
defense to enforcement of the mortgage.  In doing so, we are looking only
at whether plaintiffs presented at least one viable theory of relief.  The
trial court did not base its decision on the viability of plaintiffs’ claims,
if properly presented; it ruled only on standing.  Neither party has
briefed here the merits of plaintiffs’ claims in view of the trial court
decision.  Thus, our analysis of the merits is very limited.

¶ 51.        
Because we have ruled that the mortgage follows the note, we look first
at the note.  The parties concede that the note is a negotiable
instrument, governed primarily by Article 3 of the Uniform Commercial
Code.  Under UCC § 3-301, 9A V.S.A. § 3-301, the following
parties can enforce a negotiable instrument: 

(i)
the holder of the instrument, (ii) a nonholder in possession of the instrument
who has the rights of a holder, or (iii) a person not in possession of the
instrument who is entitled to enforce the instrument pursuant to section 3-309
or 3-418(d) of this title.[9] 
A person may be a person entitled to enforce the instrument even though the
person is not the owner of the instrument or is in wrongful possession of the
instrument.

 

9A V.S.A. § 3-301. 
Generally, a person becomes a holder through negotiation based on transfer of
possession.  Id. § 3-201.  Negotiation is effective even
if obtained by fraud, duress, or mistake, or in breach of duty or as part of an
illegal transaction.  Id. § 3-202(a).  “Transfer of an
instrument, whether or not the transfer is a negotiation, vests in the
transferee any right of the transferor to enforce the
instrument . . . .”  Id. § 3-203(b). 
However, a person taking an instrument “is subject to a claim of a property or
possessory right in the instrument or its proceeds, including a claim to
rescind a negotiation and to recover the instrument or its proceeds.”  Id.
§ 3-306.

¶ 52.        
Essentially, plaintiffs rely upon claims recognized by
§ 3-306.  In making such claims, however, they face a large obstacle
in Article 3’s provision that a stranger to a contract cannot enforce it, the
principle we relied upon above to hold that plaintiffs could not enforce
compliance with the PSA.  Section 3-305(c) provides that an “obligor may not
assert against the person entitled to enforce the instrument a defense, claim
in recoupment, or claim to the instrument (§ 3-306) of another person,”
with certain exceptions.  9A V.S.A. § 3-305(c).  Plaintiffs’
claims involve attempts to enforce rights of an earlier holder of the note, and
are barred by this provision unless an exception applies.  The only
relevant exception is where “the obligor proves that the instrument is a lost
or stolen instrument.”  Id.

¶ 53.        
While plaintiffs’ complaint did not use the terms “lost” or “stolen,”
their allegations are consistent with this theory.  The complaint alleges
that the note was fraudulently acquired by defendant, based on a fraudulent
endorsement with a forged endorsement signature,  that was created by
defendant.  These allegations are sufficient to give plaintiffs standing.[10]  The court erred in dismissing
Counts 1 and 2 of the amended complaint for lack of standing, to the extent
that these counts alleged irregularities in the transfer of the note and
mortgage unconnected to the pooling and servicing agreement.

¶ 54.        
Next, we turn to plaintiffs’ consumer fraud claim.  This claim is
based on the representation by defendant, in a letter through local counsel of
April 12, 2011, that defendant was in possession of plaintiffs’ original note
and mortgage.  The letter states that “we believe that US Bank has proper
standing to file the foreclosure action and enforce the terms of the Note and
Mortgage.”  The amended complaint alleged that defendant’s
“assertion of perfected ownership rights, title and interest in the Note and
Mortgage is fraudulent and an unfair and deceptive practice in commerce.” 
The trial court dismissed this claim because “plaintiffs have not explained how
such a statement could have been material or deceptive as it pertained to
them.”  We affirm, but for another reason.

¶ 55.        
In arguing that they have stated a claim on which relief can be granted,
plaintiffs list three “requisites” for a consumer fraud claim that they have
edited somewhat from our decision in Jordan v. Nissan North America, Inc.,
2004 VT 27, 176 Vt. 465, 853 A.2d 40, and they argue that their complaint
alleges enough to meet all of those requisites.  In bringing a private
consumer fraud action under 9 V.S.A. § 2461(b), plaintiffs focus on the
first requirement—that the act itself must be either “unfair” or “deceptive” so
as to be rendered illegal by 9 V.S.A. § 2453, to which § 2461
refers.  “Unfair” acts and “deceptive” acts each have their own tests that
we have defined through our case law, both of which are considered
objectively.  See Carter v. Gugliuzzi, 168 Vt. 48, 56, 716 A.2d 17,
23 (1998) (test for “deceptive” acts); Christie v. Dalmig, 136 Vt. 597,
601, 396 A.2d 1385, 1388 (1979) (test for “unfair” acts).  The appropriate
test here—correctly identified, at least approximately, by plaintiffs—is that
for a “deceptive” action.[11]

¶ 56.        
 There is, however, a second requirement that plaintiff does not
address.  The section of the statute providing for a private right of
action is § 2461(b), which requires a “consumer” to show either (1)
reliance on a deceptive act in contracting for goods or services or (2) damages
or injury from an unfair or deceptive act.  If a plaintiff, in bringing a
consumer fraud action, either fails to allege facts that meet the definitions
of an unfair or deceptive act under 9 V.S.A. § 2453 or fails to
demonstrate the prerequisites to a private action, as we have itemized above
under 9 V.S.A. § 2461(b), the case is properly dismissed.

¶ 57.        
We will focus on the prerequisites for a private action under 9
V.S.A. § 2461(b), and because we find that plaintiffs do not meet
these requirements, we need not look at 9 V.S.A. § 2453. 
Specifically, we look at the second prong of § 2461(b), because plaintiffs
cannot have relied on this letter to contract for goods or services, as it was
sent long after the purchase.  Our only question thus becomes: assuming
that defendant’s statement regarding its belief that it had the right to
enforce the mortgage and note was indeed deceptive, did plaintiffs suffer
damages or injury from this act?

¶ 58.        
The consumer fraud claim is closely connected to the other claims in
this action.  Assuming defendant can enforce the note and mortgage,
defendant has not engaged in deception by stating its prevailing legal
position.  Thus, the claim here is derivative of plaintiffs’ main claims
that defendant cannot enforce either the note or the mortgage.  Even if
defendant cannot enforce either the note or the mortgage, it is not clear how
plaintiffs are injured by defendant’s statement of its failed position, since
plaintiffs are still liable on the note and mortgage, either to another or to
defendant after it has cured the deficiency that stood in the way of its
enforcement.  While we can speculate on the enforcement actions another
holder of the note and mortgage might have taken, plaintiffs have failed to
make any allegations that they would be better off with another holder.

¶ 59.        
Plaintiffs do not offer an explanation as to what injury or damages the
letter caused, as they do not address the requirements of § 2461(b) at
all.  Indeed, the complaint seeks neither damages nor an injunction, the
remedies authorized by § 2461(b).  Instead it seeks a declaratory
judgment that defendant “violated Vermont Consumer Fraud Law.”  We read
the complaint as seeking a declaratory judgment that defendant violated § 2453,
without having to prove entitlement to a private remedy under
§ 2461(b).  

¶ 60.        
Decisions from other jurisdictions (although their consumer fraud
statutes vary from Vermont’s to a greater or lesser degree) are instructive in
deciding whether making false or misleading representations regarding a
debt—without any other demonstrated harm to the consumer—can cause injury for
the purposes of bringing a private CFA claim.  Two Connecticut federal
cases, for example, hold that it cannot.  See Gervais v. Riddle &
Assocs., P.C., 479 F. Supp. 2d 270, 279-80 (D. Conn. 2007) (deciding that
false communications from a debt collector, with no associated damages, do not
meet the “ascertainable loss” requirement for a private action under the
Connecticut consumer fraud statute); Goins v. JBC & Assocs., P.C.,
No. 3:02CV1069 (MRK), 2004 WL 2713235, at *3 (D. Conn. Nov. 24, 2004)
(same).  

¶ 61.        
A line of cases from Massachusetts seems superficially to help
plaintiffs: the Massachusetts Supreme Judicial Court has held that the mere
“ ‘invasion of any legally protected interest,’ ” even without a
financial injury, is a form of injury under the consumer fraud statute. Hershenow
v. Enterprise Rent-a-Car Co. of Bos., Inc., 840 N.E.2d 526, 534 (Mass.
2006) (quoting Leardi v. Brown, 474 N.E.2d 1094, 1101 (Mass.
1985)).  Making a false representation regarding a debt might be
interpreted to constitute an invasion of a legally protected interest. 
However, the court clarified that such an invasion must place the plaintiff in
a “worse and untenable position than they would have been” if the invasion of
the legally protected interest had not occurred.  Id.  The
U.S. District Court for the District of Massachusetts has found that a “demand
for payment of a debt that a consumer did not owe” fit within that framework, Gathuru
v. Credit Control Services, Inc, 623 F. Supp. 2d 113, 123 (D. Mass. 2009),
but that situation is very different than the one at hand—in Gathuru,
the claim was for fees that had not been incurred.  Here, plaintiffs do
not allege that violations occurred because of defendant’s collection
activities or its agent’s declaration of default or of how much was owed on the
note.  Instead, it alleges that the violation was based on the letter
under which defendant stated its legal position that, as a holder of the note
and mortgage, it had the right to enforce.  The Massachusetts cases are
therefore no help to plaintiffs in establishing an injury for the purpose of
the CFA.

¶ 62.        
Plaintiffs have not established an injury for the purposes of standing
under 9 V.S.A. § 2461(b).  Because we affirm the dismissal based
on standing, we need not enter into a discussion as to whether the sending of
the letter by defendant, through its attorneys, constituted a deceptive act
under 9 V.S.A. § 2453.  

¶ 63.        
Finally, we deal briefly with the question about whether the trial court
erred in not entering a default judgment against MERS.  As noted above, in
denying plaintiffs’ motion, the trial court noted that because the case was a
declaratory judgment action “in which relief granted as against one defendant
may have significant effects on the rights of others,” default judgment was not
appropriate “until all parties have been added, served, and have had time to
file answers.”  It added, however, that plaintiffs were free to renew
their motion for default judgment after those conditions were satisfied. 
The plaintiffs have never renewed their motion.  The trial court did not
err, therefore, in failing to enter a default judgment against MERS.

Affirmed as to dismissal of
Counts 3 and 4 of plaintiffs’ proposed amended complaint; reversed and remanded
with respect to dismissal of Counts 1 and 2 of plaintiffs’ proposed amended
complaint for further proceedings not inconsistent with this decision.

 

 


  
 
 
  
 
 
 FOR THE COURT:
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Associate
 Justice
 
  











[1] 
Plaintiffs also point out that the address given is in Danville, IL, where
Kittredge does not do business, and identifies that as an indication of
fraud.  This results from a misreading of the sentence, which could
equally well mean that the address is that of MERS.  

 





[2]
 We note plaintiff’s observation on this point, but do not suggest that it
affects the validity of the assignment.  Apparently, it is common for MERS
to designate an employee of the assignee as its agent to make the
assignment.  See E. Mendler, Massachusetts Conveyencers’ Handbook with
Forms § 20:32:50, at 2 (4th ed. 2013).





[3]
 We do rely, in the following discussion, on one of the documents attached
to the motion to dismiss because it discloses that, in addition to the events
alleged in the complaint with respect to the transfers of the note and
mortgage, there is another story about defendant’s collection activity and its
exercise of positions under the note as part of those activities.  These
activities provide context under the standard that it is beyond doubt that no
circumstances exist that could entitle plaintiffs to relief.





[4]
 Most of these cases have involved actual foreclosure actions commenced by
banks, where mortgagors have alleged noncompliance with the PSA as a defense to
foreclosure.  





[5] 
Other courts have reached the same conclusion, albeit with little or no
analysis of the underlying New York law.  See, e.g., Anderson, 2011
WL 1627945, at *4 (“Plaintiffs have cited no authority that an assignment made
in contravention of a PSA is invalid.”); Abubo, 2011 WL 6011787, at *8
(finding that “noncompliance with terms of a PSA is irrelevant to the validity
of the assignment”); Bank of N.Y. Mellon v. Sakala, No. CV 11-00618
DAE-BMK, 2012 WL 1424665, at *5 (D. Haw. Apr. 24, 2012) (“[T]his court as well
as other courts have held that noncompliance with the terms of a PSA is not
relevant to the validity of an assignment.”).





[6]
 Defendant answered this allegation that plaintiffs can pay Wells Fargo,
the servicing agent specified in the PSA.  In its brief, defendant notes
that plaintiffs have not alleged that any other entity claims ownership of the
loan.

 

Plaintiffs note in their brief that the home covered
by the mortgage has been contaminated by an oil spill and is worth only $41,000
and they want to extinguish the mortgage to obtain financing for a new home.

 





[7]  Plaintiffs also suggest that the rules
of ripeness and standing are not the same in this case as others because it is
styled as a quiet title action—the “injury,” presumably, being the cloud on
their title.  Although they do not flesh out this argument in their brief,
they explained in their memorandum of law in opposition to defendant’s
objection to allow the second amended complaint that “[a]s this is a quiet
title action, there is no requirement that Plaintiff do nothing until Defendant
decides to foreclose.”  Since we conclude that plaintiffs can maintain the
case, at this stage, as a declaratory judgment action, we do not consider this
argument. 





[8]
 There is another reason why plaintiffs would want to bring suit rather
than responding to defendant’s enforcement action when it comes.  As
discussed in ¶ 53, infra, plaintiffs’ claims with respect to the
note are, essentially, that it was stolen through an unauthorized and forged
endorsement.  Normally, an obligor under a negotiable instrument may pay a
person who can enforce the instrument, and receive credit for that payment,
even though the obligor knows that another has a claim to the instrument. 
U.C.C. § 3-602(a); 9A V.S.A. § 3-602(a).  In those
circumstances, the obligor faces no risk of double payment.  There is an
exception, however, if the obligor “knows that the instrument is a stolen
instrument and pays a person it knows is in wrongful possession of the instrument.” 
9A V.S.A. § 3-602(b)(2).  Plaintiffs allege that the instrument is
stolen and, if proved, could be charged with that knowledge.  They bear a
risk if they make payments to defendant’s service agent; a declaratory judgment
action can determine if the risk is real.





[9]
 In their amended complaint, plaintiffs allege that defendant cannot
enforce the note because it is not a holder in due course, it obtained the note
by a fraudulent endorsement and some other person or entity “may be the owner
of the Note.”  We agree, assuming that the allegations in the complaint
are true, that defendant would not be a holder in due course.  See UCC
§ 3-302(a)(2) (stating that holder must have taken instrument “in good
faith” and “without notice that the instrument contains an unauthorized
signature or has been altered”); 9A V.S.A. § 3-302(a)(2).  But, the
purpose of holder in due course status is not to create a right to enforcement,
but to limit defenses an obligor can raise.  See id.
§ 3-305(b).  Defendant can enforce as a holder.  Id.
§ 3-301.  We discuss the allegation of the fraudulent endorsement in
¶ 53, infra.  As we also discuss in ¶ 52, the fact that
someone else owns the note is not a defense absent the specific circumstances
in the exception in § 3-305(c).





[10]
 These allegations also create a risk of double payment.  See n.8, supra.





[11] 
Confusingly, plaintiffs’ brief begins its section on consumer fraud with the
test stated in Carter, 168 Vt. at 56, 716 A.2d at 23, as repeated in Jordan,
2004 VT 27, ¶ 5, and then references the test of Christie, 136 Vt.
at 601, 396 A.2d at 1388, for “unfair” acts, without explaining the relation
between the two.  Given the facts alleged, however, it is clear that it is
the test for “deceptive” acts that applies in this case.