2007 VT 122

**In re E.A. & E.A., Juveniles**

[944 A.2d 220]

No. 07-203

*Manley*, J.

¶ 1. November 15, 2007. Mother and father both appeal family court orders terminating their parental rights to two children, E.A. and E.A. The family court orders were based on the parents' agreements to terminate residual parental rights. Thereafter, both parents filed pro se petitions, endeavoring to retract the relinquishment of their parental rights. The family court considered the petitions notices of appeal. On appeal, parents contend that they are entitled to retract their termination agreements pursuant to the terms of the Vermont Adoption Act (VAA). We conclude that the VAA is not applicable to this juvenile proceeding, and affirm the termination orders.

¶ 2. In November 2005, the family court found both E.A. and E.A. were children in need of care or supervision (CHINS) based on the parents' stipulation that father had a history of domestic violence and substance abuse, and that mother had parenting deficits that rendered her incapable of meeting her children's needs. In January 2006, the court granted the Commissioner of the Department for Children and Families (DCF) custody of the children. The children returned to live with parents in April and August 2006, but DCF retained custody. Following an incident in October 2006, where father physically abused an older son then living with the family, the children returned to foster care. DCF then changed the case-plan goal to adoption and filed petitions to terminate in January 2007. The court set a contested termination hearing for April 19, 2007. At the hearing, both parents agreed to voluntarily terminate their parental rights. Each parent signed a termination agreement, recognizing that it was in the children's best interests to terminate their parental rights.

¶ 3. At the hearing, the court conducted a colloquy with each parent. In answer to the court's questions, father testified that he understood he was agreeing to terminate his parental rights and that it was a final decision. Father also stated that he was satisfied with his attorney's representation and that he understood the proceeding. The court also questioned mother, and she confirmed that she was competent to make the decision, and was making it of her own free will. Mother confirmed that she understood she was terminating her parental rights and that she could not change her mind later. The court questioned, "You understand as well that you can't go to any other court like you can't go to Family Court, you can't go to Probate Court to try and change this, that when you make this decision today it's for all courts for all time?" Mother answered affirmatively. Although mother expressed some dissatisfaction with her attorney, mother explained that she had had enough time to decide, and was voluntarily deciding to terminate because it was in her children's best interest. Based on the testimony, the court found that each parent had voluntarily and knowingly executed the termination documents. The court terminated the parents' rights and granted DCF custody without limitation as to adoption.

¶ 4. On May 17, 2007, mother and father filed petitions to appeal, attaching affidavits to explain why the termination

decisions should be invalidated. Father claimed that he was told that he would go to jail if he did not agree to termination. Mother's affidavit asserted that she had only fifteen minutes to make her decision and was told that she or father would go to jail if she insisted on a contested hearing. The court construed their petitions as notices of appeal.

¶ 5. On appeal, mother and father contend for the first time that: (1) their pro se filing constituted a revocation of a voluntary relinquishment of their parental rights under the VAA, and (2) the VAA's twenty-one-day period for revocation should be tolled because parents were erroneously advised that their relinquishment was irrevocable. The State responds that (1) parents cannot raise any issue under the VAA because they failed to raise it below, (2) the VAA does not apply to juvenile proceedings, such as this one, and (3) the record supports termination.

¶ 6. We agree with the State that the VAA does not apply to this juvenile proceeding and affirm the termination orders. Determining whether mother and father may revoke their termination decision is a question of law, which requires us to construe both the VAA and the statutes relating to juvenile proceedings. In construing statutes, "[o]ur overall purpose is to implement the intent of the Legislature." *In re Margaret Susan P.*, 169 Vt. 252, 262, 733 A.2d 38, 46 (1999). Therefore, we first examine the statutory language itself to determine whether its meaning is plain. *Id.*

¶ 7. The VAA grants probate courts "jurisdiction over a proceeding for the adoption of a minor commenced under this title." 15A V.S.A. § 3-101(a). Relinquishment of parental rights under the VAA is done when a parent voluntarily decides to place a child up for adoption. The VAA sets out procedural and content requirements for a parent or guardian to comply with before deciding to put a child up for adoption. See *id.* §§ 2-405, 2-406.

Specifically, the VAA states that a parent who executes a relinquishment may revoke the consent within twenty-one days by filing a written notice in court. *Id.* § 2-404. The VAA is not a protective statute, endeavoring to protect children from abuse or neglect, rather its purpose is to set uniform laws governing the adoption process. See M. Arzt, *In the Best Interests of the Child: The Uniform Adoption Act*, 25 Stetson L. Rev. 835, 842 (1996) (explaining that the goal of the Uniform Adoption Act, upon which the Vermont statute is based, is to "draft adoption laws with the goals of certainty, predictability, and most of all, stability").

¶ 8. In contrast, a child comes under the jurisdiction of the family court if it finds the child is a CHINS or delinquent. 33 V.S.A. § 5503. A child is CHINS if he or she is abandoned or abused, without proper parental care, or beyond the control of his parents. *Id.* § 5502(a)(12). Once a child is found to be a CHINS, the family court has jurisdiction to issue certain "orders of disposition most suited to the protection and physical, mental and moral welfare of the child," including transferring legal custody. *Id.* § 5528.[*] The court may modify its orders, upon a showing of changed circumstances and in the best interests of the child. *Id.* § 5532.

¶ 9. In this case, the proceedings leading to termination of mother's and father's parental rights were based on the protective juvenile statutes in chapter 55 of Title 33, not the adoption provisions of the VAA. The children came under the family court's jurisdiction following the CHINS determination, and the family court retained exclusive jurisdiction over

---

[*] The family court has a variety of options at disposition, but adoption is not one of them. The family court may terminate parental rights without limitation as to adoption, but the court is not granting an adoption like the probate court would under the VAA.

the proceedings related to their welfare, including the termination decision. See 15A V.S.A. § 3-101(f) ("Nothing in this section shall be construed to remove jurisdiction from the family court over relinquishments or termination of parental rights under 33 V.S.A. chapter 55."). Thus, the VAA's provision allowing a parent who is releasing a child for adoption a period in which to revoke his or her decision does not apply, and there is no parallel provision in the juvenile statutes for revoking a termination decision. There is no basis to revoke the termination orders and they are affirmed.

*Affirmed.*

¶ 10. **Johnson, J.,** dissenting. I respectfully dissent. I would remand the case to the family court to hold a hearing on the parents' allegations that they were under duress at the time they agreed to relinquish their parental rights.

¶ 11. As noted by the majority, a termination of parental rights order was issued by the Caledonia Family Court after a hearing at which both parents relinquished rights to their children. Although the parents were questioned by the family court and asserted at the hearing that their relinquishments were voluntary, they filed pro se petitions within days afterward in an attempt to undo their actions. The parents claimed they were under duress when they made their decisions and requested a contested hearing. Although they titled their request "Petition to Appeal," it is apparent from the allegations of fact and the request for a contested hearing that the petitions were in the nature of motions to reopen. Despite the allegations of threats and duress, the family court treated these petitions at face value as notices to appeal. The case then came to us for review, with the parents represented by appellate counsel. Counsel for the parents did not raise the issue of duress, but raised a new issue not raised below, namely whether

the Vermont Adoption Act (VAA), 15A V.S.A. §§ 1-101 to 8-101, permits parents to overcome their relinquishments when the case initiates as a CHINS case.

¶ 12. The majority chooses to reach the question of the VAA's applicability, but I think the better approach is to remand to determine whether there is any truth to the parents' allegations that their relinquishments were involuntary. First, it was error for the trial court to treat the parents' petitions as notices of appeal, regardless of how they were titled. We cannot, on appeal, address the petitions in the first instance because they allege factual matters that must be determined first in the trial court. See *Jordan v Nissan N. Am., Inc.*, 2004 VT 27, ¶ 10, 176 Vt. 465, 853 A.2d 40 (matters not raised at trial court may not be raised for first time on appeal). Therefore, treating the petitions as notices of appeal made no sense. Second, even the State recognizes that the trial court could have treated the petitions as a motion for relief under Vermont Rule of Civil Procedure 60(b) or 33 V.S.A. § 5532, either of which would have permitted the trial court to set aside the relinquishments if it found the parents' allegations were true. The State argues, instead, that we should affirm because counsel abandoned the claim on appeal, that further delays will deprive the children of permanency, and that we should rely on the trial court record for an assessment of voluntariness.

¶ 13. None of the State's reasons for affirming the court below are persuasive. I recognize that we are hampered here because counsel in this case waived oral argument, and we did not have the opportunity to inquire as to whether appellate counsel, with the parents' consent, deliberately abandoned parents' petition to set aside the order in favor of making the VAA claim. Usually, we presume that counsel acts with the consent of the clients. See *New England Educ. Training Serv, Inc. v. Silver St. P'ship*, 148 Vt. 99,

102, 528 A.2d 1117, 1119 (1987) (client is generally bound by actions of attorney acting on his or her behalf). But, given the nature of the allegations and the rights involved, the trial court's error in the treatment of the petitions, and the lack of opportunity to understand what happened below, I am unwilling to presume that the issue on appeal is the result of deliberate choice by the parents. I am concerned that the allegations, made pro se, are outstanding and that no court has seen fit to look into them. A remand to answer this question would not take an excessive amount of time, such that any permanency would be jeopardized for these children. And the State's additional suggestion that we simply rely on the trial court record for voluntariness begs the question raised by the petitions filed after the hearing.

¶ 14. This is an unusual case, one in which the majority reaches an issue not raised below, and in which I advocate reaching an issue raised below, but not addressed by the family court or by us. The better course, if we are overlooking our rules, is to overlook them in favor of the parents and ensure that their decisions to relinquish parental rights were voluntary.