VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.        23-AP-322



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

MARCH TERM,   2024

| | |
|---|---|
| In re M.J., Juvenile<br>(B.J., Father\*) | APPEALED FROM:<br><br>Superior Court, Rutland Unit,<br>Family Division<br>CASE NO. 20-JV-00329<br>Trial Judge: John W. Valente |

In the above-entitled cause, the Clerk will enter:

Father appeals from a family division order terminating his parental rights in his son M.J. The order was based on father's written agreement to relinquish those rights, which the court accepted after engaging him in a colloquy.[1]  Father now argues that, during the colloquy, he made statements that left the voluntariness of his actions uncertain and the court therefore erred in treating a subsequently filed document as a notice of appeal rather than a motion to revoke his relinquishment under Vermont Rule of Civil Procedure 60.  We affirm.

The record reflects the following.  In October 2020, the State filed a petition alleging that M.J., born in August 2011, was a child in need of care or supervision (CHINS).  The supporting affidavit alleged that father had sexually abused M.J.'s sisters and was recently incarcerated on related charges, and the Department for Children and Families (DCF) was concerned about mother's ability to care for and protect the five children remaining in the home.  M.J. was placed in DCF custody under emergency- and temporary-care orders.

In April 2021, the family division found that M.J. was CHINS at the time of the State's petition based on parents' stipulation that mother engaged in excessive discipline which posed a risk of harm to M.J.  The following month, the court approved a disposition case plan with a goal of reunification with mother only.

DCF filed a petition to terminate both parents' rights in M.J. in July 2023.  The petition incorporated by reference a case plan indicating that father was incarcerated and DCF no longer supported reunification with mother, who had allegedly ceased communicating with DCF after she was substantiated for sexually abusing M.J. during a visit and charged with a related crime.

---

[1]  Mother's rights were also terminated based on a relinquishment agreement; she does not appeal.

Father and mother each executed an agreement to voluntarily relinquish their parental rights in M.J., along with a supporting affidavit and waiver. These materials were filed with the family division in August 2023.

At a September 2023 hearing, the court engaged each parent in a colloquy regarding their relinquishment agreements. When asked whether he signed the agreement, father replied, "It's not where my heart is, Your Honor. But I feel I have no power in the position I'm in. I did sign it freely, really, and I just, you know—it's not what I want. But I guess I don't have a choice in this matter." However, father later indicated he understood he had the right to oppose the State's petition and move forward with a contested hearing. The court reviewed in detail the rights father was giving up by choosing not to do so. Father again indicated that he understood. Father confirmed that he signed the agreement and accompanying documents freely and voluntarily and was not forced to do so.

At one point during the colloquy, father stated,

> I'm never going to say goodbye to my boys, Your Honor. . . . They are my boys. I love them dearly. I have never done anything wrong to my boys. And for me to kick my boys into this, you know—this side is, you know, pretty selfish on my behalf. I've only got a few months left in here. I do have an opportunity—I've taken parenting classes up here, Your Honor. And one day I'd like to have my boys home.

In response, the court asked father whether he understood that, if his relinquishment agreement were accepted and the termination of his rights ordered, the order would be permanent and father would have no remaining rights, including the right to visit M.J. Father confirmed that he understood this. He agreed that relinquishment was in M.J.'s best interests.

When asked if he had spoken with his attorney about signing the agreement, father replied, "I did, Your Honor, in the hopes that I'd be able to stay in contact with [M.J.], that I would be allowed to have a conversation once a month to see how he's doing. And DCF has totally prohibited me from having contact with my boys." The court again sought to confirm that father had consulted with his attorney, and father stated, "I'm not sure that I did, Your Honor, but we can forward." The court offered father an opportunity to speak privately with his attorney before moving ahead. However, father declined to do so in the following exchange:

> Father: Your Honor, at this point, my feelings are that [DCF] is going to get what they want, regardless of how I feel and regardless of what I know is right and what I know is wrong. I don't need to discuss that with my attorney.
>
> The Court: Okay. You know that you could say to me, Judge, I know I signed that agreement to terminate parental rights, I know I signed the affidavit, but I'd like to have a hearing. You don't have to agree to all this today. That's why we have these opportunities for you. Do you understand all that?
>
> Father: I do, Your Honor, but I think it's the right thing to do to support my wife in this matter.

The Court: Okay. All right.

Father: If I had a chance to do it by myself I would do that, but you know, I'm not in a good position today.

With this, the colloquy concluded. The court indicated that it was convinced both parents had agreed to relinquish their parental rights freely and voluntarily, and that their decisions were made without force or coercion. It then issued oral and written orders terminating both parents' rights.

Shortly thereafter, father filed a handwritten document stating: "Your honor [I] would like to appeal the court[']s decision reg[]arding the docket above To the Supreme Court I would like to retain some parental rights with my sons. Your honor [I] would like the court to assign counsel as was stated at hearing[.]" The family division then transmitted the case to this Court for appeal.

On appeal, father argues that in light of his colloquy statements and the fundamental nature of the constitutional rights at stake, the family division erred in treating his October filing as a notice of appeal rather than a motion to revoke his relinquishment under Rule 60.

Father does not assign error to the family division order finding his relinquishment voluntary and terminating his parental rights. However, we find it necessary to begin by addressing the weighty contention that his colloquy statements were equivocal and cast doubt on the voluntariness of his decision to relinquish his parental rights.

As father recognizes, "[t]he right to care for one's children is a fundamental liberty interest, recognized and protected by this [Court] and the United States Supreme Court." Boisvert v. Harrington, 173 Vt. 285, 292 (2002). Though fundamental rights may undoubtedly be waived, any such waiver must be knowing, intelligent, and voluntary. West v. N. Branch Fire Dist. #1, 2021 VT 44, ¶ 52, 215 Vt. 93; State v. Tribble, 2012 VT 105, ¶ 35, 193 Vt. 194.

The record supports the conclusion that father's relinquishment satisfied this standard. During the colloquy, father repeatedly confirmed that he understood he had the option to go forward with a contested hearing. He indicated that he knew choosing to move forward with the relinquishment would result in the termination of all of his parental rights in M.J. and that he felt that this was in M.J.'s best interests. Although father made statements during the colloquy suggesting that he wished the circumstances that led him to his decision were different, he also expressly confirmed that he made the decision freely and voluntarily and was not forced to do so. We do not agree that the voluntariness of father's agreement to relinquish his rights was uncertain.

With that understanding, we consider father's argument that his October filing should have been treated as a motion to revoke his relinquishment. Under 33 V.S.A. § 5113(a), an order terminating parental rights "may be set aside in accordance with Rule 60 of the Vermont Rules of Civil Procedure." See In re C.L., 2021 VT 66, ¶ 38, 215 Vt. 341 (explaining that § 5113(a) permits court to grant relief from termination order under Rule 60). Rule 60 provides that, on motion, a court may relieve a party from an order for one of the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to introduce; (3) fraud (whether heretofore

3

denominated intrinsic or extrinsic), misrepresentation, or other misconduct of a party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

V.R.C.P. 60(b).

In support of the argument that his filing should have been interpreted as a motion seeking such relief, father relies on a dissenting opinion in In re E.A. 2007 VT 122, ¶¶ 10-14, 183 Vt. 527 (mem.) (Johnson, J., dissenting). In that case, the parents' rights were terminated based on their relinquishment agreements, but they subsequently filed pro se documents titled "petition to appeal." These filings requested a contested hearing and were accompanied by affidavits alleging that the parents were under duress when they agreed to relinquish their rights. The trial court treated the filings as notices of appeal. A dissenting Justice argued that this was error because it was "apparent from the allegations of fact and the request for a contested hearing that the petitions were in the nature of motions to reopen," and therefore should have been treated as motions for relief under Rule 60(b), which "would have permitted the trial court to set aside the relinquishments if it found the parents' allegations were true."[2] Id. ¶¶ 11-12.

Putting aside that father's argument relies on a dissenting opinion, the facts of this case are readily distinguishable from those present in In re E.A. Father's filing did not request a contested hearing or raise allegations of duress, but instead specified that he was seeking to appeal to this Court. See V.R.C.P. 7(b)(1) (providing that motions must "state with particularity the grounds therefor including a concise statement of the facts and law relied on, and shall set forth the relief or order sought"); V.R.F.P. 2(a) (providing that V.R.C.P. 7(b) applies to juvenile proceedings). And as set forth above, father's colloquy statements did not raise any specter of involuntariness that could have played a role in the interpretation of his filing, which indicated only that father was seeking an appeal in which he would be represented by counsel and that he "would like to retain some parental rights." The allegation that father—who had agreed to relinquish his rights—now wished to retain some of those rights does not, on its face, bear any obvious connection to any basis for relief enumerated in Rule 60(b). To the contrary, Rule 60(b) does not "protect a party from tactical decisions which in retrospect may seem ill advised," see Okemo Mountain, Inc. v. Okemo Trailside Condominiums, Inc., 139 Vt. 433, 436 (1981), or offer "an open invitation to reconsider matters concluded at trial," see Olde & Co., Inc. v. Boudreau, 150 Vt. 321, 324 (1988). The considerations that led a dissenting Justice in In re E.A. to suggest the parents' pro se filings should have been treated as Rule 60(b) motions are not present here.

Father has offered no other support for the argument that his filing should have been interpreted in this fashion. Indeed, he fails to identify any subdivision of Rule 60(b) under which he believes he is entitled to relief. See V.R.A.P. 28(a)(4) (providing that appellant's brief must contain argument setting forth "appellant's contentions and the reasons for them—with citations to the authorities, statutes, and parts of the record on which the appellant relies"). This

---

[2] The dissent also suggested that in the alternative the petition could have been addressed under 33 V.S.A. § 5532. In re E.A., 2007 VT 122, ¶ 12. Section 5532 has since been repealed. See In re D.C., 2016 VT 72, ¶ 33, 202 Vt. 340.

inadequate briefing precludes any further consideration of father's argument that he was entitled to relief under the rule. Father has not demonstrated that the family division erred when it took his October filing at face value and treated it as a notice of appeal.

Affirmed.

BY THE COURT:

Paul L. Reiber, Chief Justice

Harold E. Eaton, Jr., Associate Justice

Nancy J. Waples, Associate Justice

5